## Smedley *versus* Erwin *et al.*

1. The provisions of the General Road Law of June 13th 1836 embrace streets laid out under a special law as well as roads or streets laid out under the direction of a Court of Quarter Sessions; and relate to streets in the city of Philadelphia as well as country roads.

2. The proviso in the first section of the Road Law of 1836, that its provisions relative to the appointment of viewers, &c., shall not extend to Philadelphia, refers to the appointment of viewers, and not to the assessment of damages.

3. Courts cannot prohibit the execution of an Act of Assembly to open a street, on the ground that the legislation was "hasty and improvident," unless where there is a transgression of the power of the legislature in taking private property for private use.

4. Taking land for a public highway is taking it for a public use, and the degree of the public necessity is exclusively for the legislature.

5. An Act of Assembly directed that the commissioner of highways of Philadelphia should, "within thirty days after the passage of the act, open for public use" a street designated in the act. *Held*, that the act was for a public purpose, to secure the street without delay, and appropriated the land for the street by its own force, and the power to open the street did not expire by the commissioner's neglect to exercise it within the time named.

APPEAL from the Court of Common Pleas of *Philadelphia*. In Equity.

In the court below this was a bill of complaint by Elizabeth C. Erwin, Mary L. Erwin, Samuel Agnew and Susan his wife (formerly Erwin), Margaret T. Erwin and Louisa Erwin, against the

[Smedley *v.* Erwin.]

City of Philadelphia and William W. Smedley, chief commissioner of highways of said city, filed August 17th 1864. The city filed a disclaimer, February 2d 1865.

The bill set forth, that the complainants owned a tract of land in the Twenty-sixth Ward, part of which lay between Twenty-first and Twenty-second streets and Fitzwater and Catharine streets; that, August 10th 1864, notice was given by the commissioner to the executors of Susan Erwin, the mother of the complainants, stating that he is directed by an Act of Assembly of May 20th 1864, to open Evergreen street, between Twenty-first and Twenty-second streets, within thirty days from the passage of the act, and that in ten days from the notice, Evergreen street will be declared a highway; that the complainants had no knowledge of the passage of said act; that the thirty days for opening the street has elapsed, and the commissioner is now without power in the premises; that the street, if opened, will take part of their land and cut it much to their loss; that they are informed the street is not laid out on any of the plans of the city; that Fitzwater street is not actually opened to Twenty-second street, and Evergreen street, if opened will open on a common, and be of no use as a public highway, is not called for by any consideration of public good, but is intended only for the private benefit of owners of adjacent ground; that complainants will sustain damage, and the act provides no remedy for recovering it; that Smedley has taken no means to ascertain the damages, nor have any been paid or secured to be paid to the complainants, and Smedley threatens and is about to take the land without assessing, paying or securing the damages; and praying an injunction against opening Evergreen street and for general relief.

Smedley answered, admitting most of the allegations, but averring that the defendants have a full remedy by which the damages can be ascertained and paid, and that he has delivered a bond with adequate surety, sufficient to protect the complainants, conditioned for the payment of their damages; and averring that the court cannot restrain the opening of the street as directed by the act. The act is as follows:—

"That the chief commissioner of highways of the city of Philadelphia shall, within thirty days after the passage of this act, proceed and open, or cause to be opened for public use, Evergreen street from Twenty-first street to Twenty-second street, said Evergreen street to commence on the west side of said Twenty-first street, at the distance of one hundred and fifteen feet northward from the north side of Catharine street, and to extend westwardly of the width of thirty feet between lines parallel with said Catharine street to the east side of Twenty-second street."

The court (Thompson, P. J.), March 9th 1865, directed a perpetual injunction against opening the street.

This decree was assigned for error.

[Smedley v. Irwin.]

*D. W. Sellers* and *C. M. Husbands*, for appellants.—1. The right of the legislature to take land for highways is undoubted, both on the ground of eminent domain and by reason of the allowance of six per cent. for roads, &c.

2. The Act of June 13th 1836, § 76, Pamph. L. 566, provides a mode for assessing damages. The Act of April 1st 1864, Pamph. L. 206, directs that the damages assessed shall be paid by the city. The complainants could file their petition to have the damages assessed, and could sue the city if not paid: City v. Dickson, 2 Wright 247; City v. Dyer, 5 Id. 463; Monaghan v. City, 4 Casey 207. The act was good if there had been no way provided by it or by the general law for damages; they are a matter of grace not of right: Workman v. Mifflin, 6 Casey 370. Article 7, § 4, of the Constitution does not apply to a municipal corporation having unlimited powers of taxation: District of Pittsburgh, 2 W. & S. 324–5; Keene v. Bristol, 2 Casey 48; Yost's Report, 5 Harris 524; Wolbert v. City, 12 Wright 439; per Agnew J.; Scott's Case, 1 Barr 309; Heston v. Commissioners, Brightly 185.

3. The security given by respondent was a bar to the bill. Before the Act of 1864, the law allowing the councils to open streets laid out on the plans of the city, required security to be given to the owner before opening: Act of April 21st 1855, § 7, Pamph. L. 266. After security given there is a right to proceed: Sower v. City, 11 Casey 236. This street was not on the public plan, and an act was required. It was the duty of the court to carry out the act: Monongahela Bridge Co. v. Kirk, 10 Wright 129.

4. The limit of thirty days was to restrain the Commissioners from acting forthwith. The act should not be so construed that the omission of the officer to do his duty promptly would defeat it.

5. The court had no power to issue an injunction in this case. The Act of April 8th 1846, Pamph. L. 272, provides that the courts of Philadelphia shall not grant, &c., injunctions against public works authorized by the legislature, until questions of title and damages shall be decided by a common-law court: Wolbert v. City, *supra.*

*Wm. J. McElroy* and *George Junkin*, Jr., for appellees.—1. All the facts alleged in the bill are admitted, by the defendant not denying them. A defendant must use diligence to acquire information to enable him to answer: 2 Danl. Ch. *882, *977, note 2. The determination by the legislature what is a public use may be controverted by the facts: Pittsburgh v. Scott, 1 Barr 314. The facts that this street is not on the public plan, nor called for by any consideration of public good, will be of no utility as a highway; is intended for private benefit, and that the city disclaims

[Smedley *v.* Irwin.]

any connection with the matter; are sufficient to show that. the right of eminent domain has been " abused by hasty and improvident legislation." The parties might have availed themselves of the general road laws, and then the complainants would have had notice.

2. The act provides no mode of assessing and obtaining damages; this should have been done: Pittsburgh *v.* Scott, *supra;* Const. of Penna., Art. 9, § 10. The mode provided by the General Road Law of 1836 was for streets laid out under the provisions of that act: § 76, Purd. 881, pl. 103. The seventh section provides for damages for a public road opened "*as aforesaid.*" The resolution of May 29th 1840 provides that the seventh, eighth and ninth sections of the act shall apply to damages for opening a road under a special Act of Assembly, and did not include the seventy-sixth section, which relates to Philadelphia. The mode of assessing in Philadelphia was changed by the Act of April 21st 1858, § 5, Purd. 883, pl. 119. The act can apply only to cases of streets opened by order of councils under Act of 21st April 1855, Purd. 882, pl. 113. So of the Act of April 1st 1864. The language of all the acts shows them to be one system, applying to roads opened by the court on petition of property holders or by the councils. The tender of security cannot cure the defect, because not authorized by law.

3. The power to open expired after the thirty days. The act is in derogation of the rights of private property, and is to be construed strictly : Dwarris on Statutes 750 ; Rex *v.* Croker, Lofft's R. 438 ; s. c. Cowp. 26. Where a statute requires a thing to be done within a *certain time*, the lapse of a day is fatal: Dwarris 748 ; Farrell *v.* Tomlinson, 5 Br. P. C. 748. In private acts, where the words are ambiguous, every presumption is to be made in favour of private property : Dwarris 750 ; Sedgwick on Stat. and Const. Law 351 ; Powell *v.* Tuttle, 3 Com. 396 ; Olmsted *v.* Elder, 1 Seld. 144 ; Sherwood *v.* Reed, 7 Hill 431 ; Sedgwick 322–347 ; Davison *v.* Gill, 1 East 64 ; Bensley *v.* Mountain Lake Co., 13 Cal. 306 ; Sharp *v.* Speir, 4 Hill 76 ; Sharp *v.* Johnson, Id. 92 ; Rathbun *v.* Acker, 18 Barb. 393 ; Sibley *v.* Smith, 2 Mich. 486.

If this act is invalid, or the commissioner be without authority, a court of equity can restrain him: Bonaparte *v.* Camden & Amboy Railroad Co., Bald. 205. This is not a public work. The park, in Wolbert *v.* City, 12 Wright 439, was for the benefit of the city: here the city has no interest. Smedley does not act here as an officer of the city: he is simply an individual appointed by the act..

The opinion of the court was delivered, February 5th 1866, by Strong, J.—The court below was of opinion that the special

[Smedley *v.* Erwin.]

Act of Assembly of May 20th 1864, by which the chief commissioner of highways was directed to open, or cause to be opened, Evergreen street for public use, cannot constitutionally be enforced, because it indicates no method of ascertaining or securing the damages to owners of property taken for the street. In this we think they were mistaken. It may be that the Act of April 1st 1864, entitled "An Act relating to the opening of streets and payment of damages therefor in the city of Philadelphia," applies only to streets laid out on the public plans of the city, and ordered by the city councils to be opened as provided for in the Act of April 21st 1855, and that it has no reference to streets directed be to opened by special enactments of the legislature. Such was the view taken of it in the court below. But the General Road Law of June 13th 1836 embraced as well the case of a street laid out under the authority of a special law, as the case of a road or street laid out under the direction of a Court of Quarter Sessions. This is not denied so far as concerns county roads.

But it is contended that streets in the city of Philadelphia, not on the public plans, and not made streets by proceedings of the Court of Quarter Sessions, but becoming such by special law, are not embraced in the provisions of the Act of 1836, relative to the assessment of damages. A distinction it is said is made between roads laid out in the country in virtue of special laws, and streets in the city made such by similar laws. And we are, referred to the legislative resolution of May 29th 1840, Pamph. L. 752, by which it was resolved, that the seventh, eighth and ninth sections of the Act of the 15th of June 1836 (the General Road Law), shall be construed to apply to claims for damages in consequence of injury sustained from the location and opening of a road under the provisions of any special Act of Assembly, unless when the same is otherwise provided for by law. Inasmuch as the 76th section was not included among those to which such a construction was directed to be given, it is inferred the legislature did not intend streets in Philadelphia laid out by virtue of special laws, to be governed by the provisions of the general law. The inference is not well founded. The Act of 1836 prescribed a general system for laying out and opening roads and streets throughout the Commonwealth. All its provisions are as applicable to Philadelphia as to any other county, except so far as they are expressly declared to be inapplicable. The 7th, 8th and 9th sections are operative in this city as fully as elsewhere, saving only the particulars in which alterations were made by the 76th and four next following sections. Those alterations relate exclusively to the time of presentation of petitions for assessments, to the mode of selecting the jurors for views, and to their qualifications. In all other respects there is no difference. No other difference was intended. The 1st section of the act enacts that

1 P. F. Smith—29

[Smedley *v.* Erwin.]

the Court of Quarter Sessions of every county of the Commonwealth shall appoint viewers, to view the ground proposed for a road, and make report of their proceedings to the respective court at the next term thereof, with a proviso that the provisions of the act relative to the *appointment* of viewers to lay out roads and to assess damages shall not extend to the city and county of Philadelphia, thereinafter specially provided for. It is not the provision relative to the assessment of damages, but the provisions respecting the appointment of viewers that are declared not to extend to the city and county of Philadelphia. If the 7th, 8th and 9th sections are not in force in Philadelphia, so far as they relate to the lands taken for public use, then the act makes no provision for any assessment at all in the city. The 76th and following sections are unmeaning, except as taken in connection with the former sections, and as constituting with them a system. Hence they refer to each other. The 76th declares that the viewers, drawn in accordance with its requirements, shall be subject to all the provisions of the act prescribing the duties of viewers of roads and damages; and the 80th section prescribes that after the viewers shall be chosen (in Philadelphia), the same proceedings shall be had as are prescribed by the general provisions of the act; both clearly referring to the 7th, 8th and 9th sections, by which the right to damages as well as the mode of obtaining damages is given. We are not then to look to the sections, enacting when petitions shall be presented, and how viewers shall be selected in Philadelphia, to ascertain in what cases assessments of damages are authorized. For that we must look to the 7th section, as well when the new highway is in Philadelphia as when in any other county. The Act of 1840, therefore, which resolved that highways laid out under special laws should be deemed embraced within the 7th section, was large enough to cover such ways in Philadelphia. It would have been absurd to have enumerated the 76th section among those to which the prescribed construction should be given, for it has exclusive reference to the mode of raising up a tribunal for assessment in cases designated by the 7th. It follows that the constitutional difficulty which the court below felt, and which has been so earnestly pressed by the appellees, is not in this case. The Act of 1836 makes full and adequate provision for the assessment and recovery of whatever damages they may sustain in consequence of opening the street.

It is argued further, in support of the decree of the court below, that the Act of May 20th 1864, directing Evergreen street to be opened, was hastily and improvidently passed; that the street is not necessary for public use, and that for this reason the court may, and should, prohibit the execution of the act. This is a proposition to which we cannot assent. In the exercise of

[Smedley v. Irwin.]

their undoubted right to take private property for public use, the legislature has ordered the street to be opened. Taking land for a public highway is taking it for a public use. The degree of the public necessity is exclusively for the legislature. It is not a judicial question. We may and will take care that private property is taken under an assertion of eminent domain for no other than a public use. Thus far we may prevent the operation of Acts of Assembly which have the forms of law, while they are not legislation. And it is that to which allusion is made by Judge Rogers in Pittsburgh v. Scott, 1 Barr 314, when he asserted that to justify the exercise of the right to take the property of the citizen, "it must be for the use of the public, to be determined in the first place by the legislature, subject, however, to correction or restriction when it clearly appears the right is abused, either by design, which we cannot well suppose, or, what is more to apprehend, by hasty and improvident legislation." The abuse of which he spoke is the transgression of power in attempting to take private property for private use.

That might be by design, or, more likely, improvidently and hastily. But when the use is an undoubted public one, as is appropriation for a highway, it would be usurpation in us to prevent the execution of an act of the legislature because we might think it indiscreetly passed or enacted without proper consideration. There is no such power in the courts of this Commonwealth.

Again, it is urged that the chief commissioner of highways was without power or authority to open the street, because he did not proceed and open it, or cause it to be opened, within thirty days from the passage of the act that directed him to proceed and open it. It is said his authority expired with the thirty days. The argument overlooks the character and purpose of the enactment. It is not a grant of the eminent domain of the Commonwealth to private persons, nor is it the gift of a naked power. It is a statute for a public purpose. Its main design is to secure the street without delay. It therefore in effect appropriates the land for the street by its own force, and the direction respecting the time and agency for opening it are but incidental to the main purpose. If the street commissioner has been guilty of laches, the Commonwealth is not to suffer, especially when the delay works no injury to the complainants.

The decree of the Court of Common Pleas must therefore be reversed, and it is ordered, adjudged and decreed, that the injunction be dissolved, and that the bill of the complainant be dismissed with costs.