## Souder et al. v. Souderton Borough Council et al.

*High, Dettra & Swartz* and *Wallace M. Keely,* for plaintiffs.

*Stewart Nase,* Borough Solicitor, and *Franklin L. Wright* (of *Larzelere & Wright*), for defendants.

KNIGHT, J., June 21, 1929.—

### Questions of law involved.

1. Has equity jurisdiction? 2. Has this court, in the absence of fraud or dishonesty, the power to review the action of a borough council in selling a

municipal electrical distributing plant and granting a franchise to construct, operate and maintain electric lines along, across, over and under the public streets of the borough? 3. Has a borough the power to sell a municipal electrical distributing system at private sale?

## Questions of fact involved.

Have the defendants in the present case acted honestly and in good faith and for what they believe to be the best interests of the people in selling the distributing plant and granting a franchise to the Pennsylvania Power and Light Company or the Souderton Electric Light Company?

## Findings of fact.

1. The plaintiffs are taxpayers and residents of Souderton, an incorporated borough in the northeastern section of Montgomery County, and the defendants are the burgess and town council of said borough.

2. The Borough of Souderton owns and operates an electric light, heat and power distribution system, through which it furnishes electric energy for light and power to the citizens of the borough. The electric energy is purchased by the municipality from the Pennsylvania Power and Light Company at wholesale and by the borough resold and delivered to the consumers. The borough has no facilities for generating electrical energy.

3. The distributing plant of the borough is at least fifteen years old. It is not adequate to meet the growing demands for light and power of an increasing and progressive population. In some respects it is obsolete and antiquated, and there is a present need for improvements, changes and replacements to bring the system up to an efficient operating condition.

4. For several years prior to the year 1927 the condition of the municipal electric distributing system had been brought up frequently for consideration by the borough authorities and various suggestions were made to sell or rehabilitate the plant. Finally, in October, 1927, the borough council employed the engineering firm of Bonine and Costa to make a survey of the system and report their findings and recommendations to borough council.

On Nov. 28, 1927, Bonine and Costa submitted their survey and report to the borough council. In this report the replacement value of the physical property composing the distributing system was fixed at $49,608.06. A number of improvements and changes were recommended and five different courses were suggested for consideration of the borough in the future operation or sale of the plant, viz.: Borough retains ownership and operates its system as at present, with changes and improvements as herein suggested. Borough constructs and operates its own generating plant. Outright sale of borough electric light and power distribution system with franchise grant. Borough leases its distribution system to private corporation or individual. Borough retains ownership of its distribution system and operates same under private management.

6. In 1914, the Borough of Souderton entered into a contract with the Excelsior Light, Power and Gas Company, by the terms of which the company agreed to sell, and the borough agreed to buy, electrical energy for the basic price of 4 cents per kilowatt hour. This contract expired under its terms in 1924, but the successor of the company has continued to furnish electrical energy, and the borough to pay for the same, at the contract rates up to the present time.

7. On Aug. 23, 1923, the Excelsior Electric Light and Power Company conveyed all of its property, rights and franchises to the Pennsylvania Power

and Light Company, and since that date the latter company has supplied the Borough of Souderton with electrical energy.

8. In 1923, the Pennsylvania Power and Light Company made an offer to purchase the distributing system from the borough for the sum of $30,000. This offer was declined. On Feb. 9, 1926, the Pennsylvania Power and Light Company offered about $41,000, which offer was also refused. In August, 1927, the borough council decided to advertise for sealed bids for its distributing plant and a franchise to furnish current. An advertisement was inserted in the local Souderton paper and three bids were received. The Pennsylvania Power and Light Company bid $106,000, William W. Levering bid $112,500, and the third bid was a leasing proposition. All of the bids were declined.

9. On Aug. 7, 1928, Mr. Bonine, of the firm of Bonine and Costa, at an open meeting of council, presented a proposal to purchase the distributing system from the borough for the sum of $150,000; the proposal was accompanied by a schedule of rates and a certified check for $1000. The proposal was filed for future reference.

10. On Aug. 15, 1928, a special meeting of the borough council was held, which was attended by all the members except Mr. Freed. At this meeting, R. L. Jacques, representing the Pennsylvania Power and Light Company, presented a proposal offering to purchase the electrical distributing and street lighting system of the borough for $150,050. By a vote of four to one the offer was accepted and the proper officers authorized to execute and deliver a contract (now Ordinance No. 98). An ordinance was then presented by Mr. Jacques granting to the Pennsylvania Power and Light Company or the Souderton Power and Light Company permission to construct and operate electric lines over the streets of Souderton (Ordinance No. 99). These ordinances passed first reading. No notice of this meeting of council was given to Bonine and Costa.

11. At the regular meeting of the Souderton Town Council on Sept. 4, 1928, Aaron S. Swartz, Jr., Esq., appeared before the body representing Bonine and Costa and made a verbal offer on behalf of his clients of $155,000 for the distribution system of the borough, including franchise rights. At the same meeting, Ordinance No. 98 and Ordinance No. 99 passed second reading.

12. At the regular meeting of council held Oct. 2, 1928, Mr. Costa, of Bonine and Costa, again addressed the body and made a verbal offer of at least $165,000 for the distribution system and franchise rights. Mr. Costa also offered to furnish a bond conditioned for the operation of the system by Bonine and Costa for a period of three or five years. Mr. Jacques, representing the Pennsylvania Power and Light Company, was also present, but refused to increase his bid of $150,050, except to add $3000 for some equipment and supplies not included in the former bid. Ordinance No. 98 was duly amended so that the price for the system was stated as $153,050 and the amended ordinance finally adopted. Ordinance No. 99 was also passed. These ordinances have been approved by the burgess and advertised according to law.

13. The Pennsylvania Power and Light Company is a large public service corporation supplying light and power to a number of municipalities surrounding Souderton.

14. Bonine and Costa had sufficient financial backing to finance the purchase of the distribution system had the borough accepted their offer.

15. The Pennsylvania Power and Light Company and Bonine and Costa have each filed with their bid a schedule of rates. As these rates are tentative and must be approved by the Public Service Commission, and as there is little

or no difference between the proposed schedules of rates, it is unnecessary to find which schedule is more advantageous to the borough.

16. The burgess and town council have acted honestly and for what they believe to be for the public good throughout the negotiation and sale of the distributing system. No fraud, dishonesty, bad faith or corruption on the part of any of the defendants has been shown.

### Discussion.

It may be well to state in the beginning that, on the record, this is not a contest between rival bidders for a municipal plant, but a complaint by certain taxpayers that the borough authorities committed an improvident and improper act in selling public property for what is alleged to be a totally inadequate price. Nor are we concerned with the motives that may be behind this proceeding, whether it springs from the purest considerations of the public welfare or is inspired by the resentment and chagrin of disappointed bidders.

At the outset, the defendants challenge the jurisdiction of this court to entertain the suit. Section 1010 of the General Borough Act of May 4, 1927, P. L. 519, provides: "Complaint may be made to the Court of Quarter Sessions . . . by any person aggrieved, within thirty days after any ordinance or resolution takes effect, and the determination and order of the court thereon shall be conclusive." This, the defendants contend, vested in the Court of Quarter Sessions exclusive jurisdiction of the subject-matter of this suit, and the plaintiffs, not having availed themselves of the proper remedy, have now no standing to complain.

The section of the General Borough Act cited above is substantially a restatement of the law as it has existed for many years. The General Borough Act, therefore, provides its own remedy for persons claiming to be aggrieved in consequence of the enactment by a borough of any ordinance under the authority of the act, and the courts have held that this remedy is exclusive, especially in annexation proceedings: Whitney et al. *v.* Jersey Shore Borough, 266 Pa. 537; Scottdale Borough Annexation, 91 Pa. Superior Ct. 1.

On the other hand, it has been held that it is not in all cases that an appeal to the Quarter Sessions is the exclusive remedy for testing the validity of a borough ordinance.

Thus, in Solar Electric Co.'s Appeal, 290 Pa. 156, the validity of an ordinance was attacked in the Common Pleas, and in Manorville Borough *v.* Flenner, 286 Pa. 103, an ordinance was set aside on an appeal from a summary conviction obtained on the criminal side of the Quarter Sessions.

Leaving undetermined, therefore, the technical question of whether the plaintiffs have entered the portals of the right court, and conceding, although not deciding, that they have adopted a proper remedy, we will proceed to decide the controversy on more substantial and, we believe, more meritorious grounds than questions of procedure.

It is conceded, at least it is not denied, that a borough has the right to dispose of its property by private sale.

Section 1201 of the General Borough Act provides that the borough shall have power to purchase, hold, lease, let and convey such real and personal property as the purposes of the borough shall require. The power to convey carries with it by necessary implication the power to sell, and in the absence of any restriction or limitation in the act or in the general law, the sale may be either public or private.

Whether the sale of the distribution plant in the instant case by ordinance is an act of administration or legislation may be a matter of dispute, but there can be no doubt that the ordinance granting a franchise to place light and power lines over the streets of Souderton is a piece of legislation and the franchise is the thing of real value in this transaction.

It is a fundamental principle of our system of government that the courts cannot pass upon the wisdom of an act of the legislature except where there has been a violation of a constitutional provision. It is unnecessary to discuss the impelling reasons and irrefutable arguments in support of this wise and essential rule of law.

They are all to be found in many classic opinions handed down by our appellate courts in a long line of decisions, among which may be mentioned Sunbury & Erie R. R. v. Erwin et al., 33 Pa. 278; Smedley v. Erwin et al., 51 Pa. 445; Com. v. Moir, 199 Pa. 534.

The same rule applies to municipal corporations within the State when their legislative bodies act without fraud and dishonesty and within the scope of their delegated powers.

It has been applied many times to the mayor and council of cities. See Com. ex rel. v. Walton, 236 Pa. 220, where it is said: "If there is any popular notion that the remedy for unwise legislation by councils and the mayor is to have the courts declare that in their judgment the ordinance is unwise, vicious and prejudicial to the interests of the public, and, therefore, void, that notion cannot be removed too soon."

It has been applied to boroughs: Freeport Borough v. Marks, 59 Pa. 253, where the court held: "The legality of the acts of legislative or corporate bodies cannot be tested by the motives of the individual members or the adventitious circumstances they may lay hold of to carry their measures, provided they proceed regularly and act within the scope of their powers."

True it is that all legislative bodies, except the supreme legislature, are under the law and, therefore, all transgressions of law are subject to the authority of the judicial power established by the Constitution: Kerr v. Trego, 47 Pa. 292.

But it is only in cases of transgression of the law, fraud, dishonesty or usurpation of authority, that the courts may interfere and set aside their enactments.

Here there has been no usurpation of authority, for the Burgess and Town Council of Souderton were acting within their powers in selling the distributing plant and granting the franchise.

Fraud or dishonesty on the part of the burgess and councilmen has not been alleged or proven.

It was said very recently in the case of Robb et al. v. Stone et al., School Directors, 296 Pa. 482: "The determination of a board of school directors regarding a matter committed to its discretion presumptively rests upon considerations of public welfare and has been reached by the exercise of intelligent judgment. He who asserts otherwise has a heavy burden to carry when attempting to prove his contention."

The burden becomes all the more heavy when an ordinance of a borough council is involved.

The plaintiffs have not carried this heavy burden because they have failed utterly to show that the borough officials acted corruptly and in bad faith.

Whether these defendants acted indiscreetly and improvidently, whether they did a wise or unwise thing in disposing of the borough property in the

manner and for the price they received, are matters upon which we express no opinion. Where we have not the right to judge, we withhold our judgment.

What we do determine is that these defendants acted honestly, in good faith and for what they believed to be for the public good in a matter in which the law gives them discretionary powers.

Having determined this, it necessarily follows that we have no right to interfere with their action in the matter now before us.

### Conclusions of law.

The bill should be dismissed. The plaintiffs should pay the costs.

### Decree.

And now, June 21, 1929, it is ordered, adjudged and decreed that the prothonotary mark these findings of fact and conclusions of law filed, thereafter to become a part of the record of the case, and enter the following decree *nisi*. The bill is dismissed and the plaintiffs pay the costs.