# The Delaware, Lackawanna and Western Railroad Company *versus* Burson.

1. A railroad company was chartered by an act in 1832, and acted under that and subsequent acts, the last being in 1853, the first act providing for a mode of assessing damages and allowing an appeal. A claimant for damages is not barred by the limitation against suits for penalties in the 14th section of the General Railroad Law of 1849.

2. The assessment of damages is not a penalty.

3. The Limitation Act of 1713 meant to limit suits known to common-law actions. Per Thompson, C. J.

4. The Act of 1713 does not apply to the assessment of railroad damages. *Id.*

5. A claimant may delay proceeding for damages in constructing a railroad, till the completion of the road. *Id.*

6. Irregularities in the initial proceedings to assess railroad damages must be brought up by certiorari to set them aside. An appeal waives the irregularities.

7. A writ of error will lie to a judgment on an award of arbitrators: but the court cannot on error retrospect the regularity of the award, and on appeal reverse all the proceedings for error in entering the rule or in the award itself.

8. A road was located in 1852, and finished in 1856; the measure of land damages was the difference of the value of the property at the commencement, and completion of the road as affected by it.

9. The *cost* of fencing cannot be allowed in estimating damages from the construction of a railroad, but how much the burthen of fencing would detract from the value of the land may be considered by the jury.

10. Interest should be added to the amount of damages from the time the landowner was entitled to compensation.

11. Either party can have the damages assessed at any time after the location of the road.

12. A jury is not bound to state the items of the damage in their verdict, and should they do so, a court of error will not look at the items.

13. A married woman released railroad damages, her husband not joining. *Held,* that she was not bound by the release.

14. Foster *v.* The Cumberland Valley Railroad, 11 Harris 371, criticised.

March 16th 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the District Court of *Carbon county*: No. 326, to January Term 1869.

The proceedings in this case were commenced in the Court of Common Pleas of Monroe county, for the assessment of damages for injury done by the Delaware, Lackawanna and Western Railroad Company in locating and constructing a railroad through the land of Deborah Burson and Danelia S. Burson. On the 1st of August 1861, they presented a petition to the court, setting out that the company about the 1st of August 1853, had located their road for about 120 perches through a tract of land belonging to the petitioners, and containing 341 acres, and were engaged in constructing it until about the 1st of May 1856; that at the time of locating and constructing the road, Danelia owned and pos-

11 P. F. SMITH—24

[Delaware, &c., Railroad Co. *v.* Burson.]

sessed the land until the death of James Burson, which occurred February 14th 1855, and that Deborah owned the fee in remainder and has been in possession since his death; that the parties could not agree, &c.; and praying for the appointment of *three* men to ascertain and report the damages sustained by the petitioners.

The defendants objected to the appointment, because the Delaware and Cobb's Gap Railroad Company and the Lackawanna and Western Railroad Company, both being corporations of this Commonwealth, were by an Act of Assembly passed March 11th 1853, consolidated into one company, the defendants; that before the consolidation, viz., on the 12th of February 1853, an agreement in writing was made between Danelia and Deborah Burson of the one part, and the Delaware and Cobb's Gap Railroad Company of the other, by which in consideration of one dollar, and that the company would build the road through the lands of the Bursons on a line described in the agreement, the Bursons agreed to release all claim for damages, and if the company should afterwards construct the road on another line, the agreement should be surrendered; and that the railroad has been constructed on the line described in the agreement. Also, that Deborah and Danelia Burson on the 18th of May 1858 instituted an action of trespass on the case against the defendant, in which no declaration had been filed, but as the defendants believe was for damages for constructing their road, and that this action was still pending.

On the 31st of March 1862 the court overruled the objections, and appointed three viewers. For the same reasons the company objected to the viewers proceeding under the order of the court. The objections were overruled by the viewers, and the defendants proceeded in the examination of witnesses, reserving the right to make the same objections at any subsequent stage of the proceedings.

On the 9th of October 1862 the viewers reported in favor of the petitioners, assessing the damages at $800. The defendants, on the 7th of November 1862, filed exceptions to the report for the same reasons as were contained in their objections, with two others, viz.: that the report did not state the quantity, quality and value of the land taken, and that there was no draft accompanying the report. Same day the defendants appealed from the report of the viewers. November 8th the petitioners appealed from the report of the viewers.

The court afterwards made the following order:—

" And now, to wit: January 2d 1864, for the purpose of being able to meet the questions at issue under this motion in better form, the exceptions are dismissed. As appeals are pending, this course is adopted only for the better trial of the question; without therefore expressing at this time an opinion as to the merits of the motion, it is overruled."

On the 26th of May 1864 the defendants pleaded "not guilty." They afterwards, December 28th 1864, pleaded "not guilty" and release, and also a special plea averring the facts set out in their objections to the appointment of viewers.

On the same day, before calling the jury, the defendants moved the court to require the plaintiffs to elect between proceeding to trial under these proceedings and their action on the case. The motion was overruled. Under objection by the defendants the plaintiffs replied that at the time of the agreement Deborah Burson was a married woman. The plaintiffs also moved to amend the proceedings by striking out the name of Danelia S. Burson, and the amendment was allowed against the objection of the defendants. The jury found for the plaintiffs $1892.50. A new trial was granted on motion of the defendants. On the 14th of March 1865 the proceedings were removed by the defendant to the Court of Common Pleas of Carbon county. On the 16th of May the defendants pleaded the Statute of Limitations. On the trial a verdict was found for the plaintiffs for $3140, which was afterwards, on motion of the defendants, set aside, and a new trial awarded. On the 31st of December 1866 the death of Deborah Burson was suggested, and Stroud Burson and Daniel S. Burson, her executors, substituted.

It is necessary for a proper understanding of the case to refer to the following Acts of Assembly :—

On the 7th of April 1832, Pamph. L. 321, the Liggett's Gap Railroad Company was incorporated, and in the 22d section of the act it was provided, in relation to damages to landholders, that if the parties could not agree upon the amount of damages or upon persons to assess them, the Court of Common Pleas of the proper county should appoint "three disinterested men to ascertain and report what damages had been sustained by the landowners," &c., and it was further provided that either party might appeal to the court within thirty days after the report of the viewers should have been filed. The 38th section provides that "no suit shall be brought for any penalties incurred" by the act unless "commenced within six months after the offence committed or the cause of action accrued."

By the 23d section of the Act of April 16th 1838 under which the Pennsylvania Coal Company and other companies were incorporated, it was provided that the Pennsylvania Coal Company should not enter upon lands, &c., until the compensation for injury should have been ascertained and paid or security given ; if the parties could not agree as to the amount, &c., six persons should be chosen to estimate the damages ; but if the parties could not agree on the persons, the proper Court of Common Pleas should appoint six disinterested persons to estimate the damage, &c., with right to appeal in thirty days after filing the report.

[Delaware, &c., Railroad Co. *v.* Burson.]

Besides the provisions of the 11th section of the General Railroad Law of February 19th 1849, Pamph. L. 84, Purd. 839, pl. 13, for assessing damages, it is enacted in the 14th section of the same act, Purd. 842, pl. 27, that no suit shall be prosecuted against a railroad company incorporated under that act for any penalty incurred under it unless the suit "be commenced within two years after the offence committed or the cause of action accrued," &c.

By the 2d section of a supplement to the act incorporating the Pennsylvania Coal Company, passed March 7th 1849, it is provided that if the parties cannot agree as to the damages, the company shall tender a bond for the damages, and if the parties injured refuse to accept the bond it shall be presented to the Court of Common Pleas, and when approved by them shall be filed for the benefit of the parties interested, and the company may then proceed with the construction of their road.

On the 7th of April 1849 "The Delaware and Cobb's Gap Railroad Company" was incorporated, subject to the General Railroad Law of 1849.

The 2d section of the Act of April 6th 1850 provided that whenever the Liggett's Gap Railroad Company could not agree with parties injured, &c., the company might tender a bond and in all respects proceed as is provided in the 2d section of the supplement of March 1849 to the act incorporating the Pennsylvania Coal Company.

By the Act of April 14th 1851, the name of the Liggett's Gap Railroad Company was changed to "The Lackawanna and Western Railroad Company."

By the 1st section of the Act of March 11th 1853 consolidating this company with the Cobb's Gap Company, it was provided that the property, corporate powers, &c., of the latter company be merged in the former, "except so much of said powers, rights and privileges as conflicted, in which case the conflicting portion of the Act incorporating the Delaware and Cobb's Gap Railroad Company, and its several supplements, were repealed, and all provisions of law relative to the Lackawanna and Western Railroad Company, not thereby altered or supplied, should remain in full force." The name of the consolidated company was changed to "The Delaware, Lackawanna and Western Railroad Company."

On the trial before Barrett, P. J., it was admitted that on the 12th of February 1853 (the date of the release set out in the defendants' plea), Deborah Burson was the wife of James Burson; he died October 18th 1855, and she died August 1866; also that she owned the reversion of the land in fee, that Danelia Burson and her sister Caroline Hollingsworth each owned half the estate in the premises for the life of James Burson. The plaintiffs then offered in evidence the proceedings (above given) to assess damages; the defendants objected to their admission; the court received them

[Delaware, &c., Railroad Co. *v.* Burson.]

and sealed a bill of exceptions. The plaintiffs then gave evidence as to the damages sustained by them, and rested. The defendants gave in evidence the several Acts of Assembly above cited, and also gave evidence on the question of damages. They offered to prove that the plaintiffs' property was enhanced in value by building the railroad, and the extent of the enhancement from 1852 to August 1861, the time when the petition for viewers was presented. They further offered to prove that in 1864 Deborah Burson sold 106 acres of the land for $8000 for the purpose of affecting the value of the land in 1856. They also offered in evidence the agreement and release set out in their plea, &c. The instrument was executed by Deborah Burson and Danelia Burson, but not by James Burson nor Caroline Hollingsworth who were both living, with proof that James Burson, the husband, was present at the wife's execution of the release and· assented to it; that both of them acquiesced in the building of the railroad, made no objections· to it nor made any claim for damages within six years from its location and building. To these offers as they were respectively made, the plaintiffs objected; the offers were rejected, and the court sealed several bills of exceptions.

The following are points submitted by defendants, which were negatived by the court :—

1. The proceedings in this case are irregular, having been commenced under an Act of Assembly not applicable to this case, and therefore the plaintiffs cannot recover.

2. If the provisions of the General Railroad Law of 1849 are applicable to this case, then the plaintiffs cannot recover for the reason that the proceedings were not instituted within two years from the accruing of the cause of action.

9. Under the evidence in this case the plaintiffs' entire cause of action accrued, and the statute began to run more than six years before the commencement of these proceedings. That before that time the road having been surveyed and located the right of the plaintiff to sue for damages was complete, and she cannot recover in this proceeding because more than six years have elapsed from the location of the road, and from the death of her husband, James Burson.

10. The proceedings in this case having been instituted under the Act of 7th April 1832, incorporating the Liggett's Gap Railroad Company, the plaintiffs cannot recover, for the reason that more than six months had elapsed after the cause of this action accrued, and after she became discovert before suit was brought or proceedings instituted.

The court referred to the evidence, and amongst other things said to the jury : * * * "The suit is well brought, the proceedings are regular, the title to the land has been admitted to be in the plaintiff; the company acknowledge its responsibility for any

[Delaware, &c., Railroad Co. *v.* Burson.]

damages done. This leaves but a question of fact to go to the jury. Has the property been damaged by the construction of the road or has it not?" * * *

" The advantages to the property as well as the disadvantages. are both to be taken into consideration. The value of the whole property as unaffected by the road, and as affected by it, is the true standard. The market value of this property in 1852 should be ascertained, if possible, from the evidence. That is, the value of the entire property before the road or the prospect of the road had produced any effect upon it. Then the value of it immediately after the completion of the road in 1856, and if this can be done, it should settle the question. * * * A claim is made for the fencing. You cannot allow for the fence because it was built by the company. Nor can you allow directly a sum of money, the interest of which would keep it up perpetually. Nevertheless you may on such a calculation reach the value of the property. If the fence was rendered necessary and to be kept up for all time, it would be an increased burden upon the owner and to its extent would detract from the market value of the whole property. In arriving at the extent of the burden it is proper to take the fencing into account. * * * If taking into consideration the disadvantages in occupying the farm and the advantages resulting from a rise in value of the whole property at the time of the completion of the road, you find a balance in favor of plaintiffs, or in other words, a decrease in the value, your verdict should be in favor of the plaintiffs for that amount, with interest from July or August of the year 1856, to the present time."

The court concluded the charge, saying:—

" If you return a verdict for plaintiffs you must state the items upon which it is based; that is, you should state an account showing the items of damages and the amount allowed upon each, then deducting the advantages resulting to the property and show the balance. You can add interest only upon the balance thus shown."

The jury found a verdict in these words:—

" Verdict in favor of plaintiff—Damage, . . $900
Interest for maintain fence on . . . 400
Inconvenience, . . . . . . 1600

                                              2900

Increase 175 acres of timber $5, . .    $875
Decrease on 165 acres farm $5, . .        825      50

                                              $2850
Interest 12 years and 6 months, . . . 2137.50

                                              $4987.50 "

[Delaware, &c., Railroad Co. v. Burson.]

The defendants moved for a new trial and on the same day the plaintiffs having released the damages beyond $3000, the court overruled the motion and entered judgment on the verdict for .$3000.

The defendants took a writ of error.

The specifications of error were:—

1–4. Negativing the defendants 1st–4th, 9th and 10th points.

5–8. The extracts from the charge given above, except the last.

9 and 11. Entering judgment for the plaintiff on the verdict.

10. Entering judgment for more than $900, the amount of " damage" found by the verdict.

12 and 13. Appointing viewers on the petition, and confirming the report of the viewers.

14. Admitting the evidence of plaintiff which was objected to.

15–18. Rejecting the several offers of evidence by the defendants.

19 and 20. Overruling the exceptions to the report of the viewers, that they did not state the quantity, &c., of the land taken, and that they returned no draft.

*W. Davis* and *H. Green* (with whom was *M. M. Dimmick*), for plaintiffs in error, on the question of the Statute of Limitations, 2d, 3d and 4th errors, referred to the 38th section of the Act of 1832, and section 14 of Act of 1849, *supra;* Foster *v.* The Cumberland Valley Railroad, 11 Harris 372. The general Statute of Limitations March 27th 1713, § 1, 1 Sm. L. 76, Purd. 655, pl. 16; 1 Redfield on Railways 183; Act of April 17th 1866, § 2, Pamph. L. 106, Purd. 1442, pl. 2. The husband died February 19th 1855, and there was then a perfect cause of action in his widow Deborah Burson: Boynton *v.* The Petersboro' & S. Railroad, 4 Cushing 467; Charlestown B. Railroad *v.* Middlesex, 7 Metc. 78; Boston & P. Railroad *v.* Midland Railroad, 1 Gray 360; Drake *v.* Hudson River Railroad, 7 Barb. 552. When the location is made the right of action is complete: Wadhams *v.* Lackawanna & B. Railroad, 6 Wright 310; Barton *v.* Dickens, 12 Wright 523; Campbell *v.* Boggs, Id. 524; Act of April 9th 1860, § 3, Pamph. L. 289, Purd. 840, pl. 16. 1st, 5th, 13th and 14th errors—the regularity of the proceedings in the appointment of viewers, &c.—they referred to the Acts of Assembly cited above, relating to the several railroads. A subsequent affirmative statute repeals a former one on the same subject-matter: Johnston's Est., 9 Casey 511; Gwinner *v.* Lehigh & Del. W. G. Railroad, 5 P. F. Smith 126; Dash *v.* Van Kleeck, 7 Johns. 497; Com'th *v.* Cromly, 1 Ash. 179; Dexter L. P. R. *v.* Allen, 16 Barb. 15; Livingston *v.* Harris, 11 Wendell 329; Bartlet *v.* King, 12 Mass. 545; Dwarris on Stat. 673–6. 15th and

[Delaware, &c., Railroad Co. v. Burson.]

16th errors—measure of damages: Thoburn's Case, 7 S. & R. 411; Harvey *v.* Lackawanna & B. Railroad 11 Wright 434; Watson *v.* Pittsburg & Connellsville Railroad Co., 1 Wright 481; East Penna. Railroad Co. *v.* Hottenstine, 11 Id. 30; Hornstein *v.* Atlantic & Great Western Railroad Co., 1 P. F. Smith 90.    7th error—as to the fence: Railroad *v.* Skinner, 7 Harris 298.    8th error—as to interest: Eckert *v.* Wilson, 12 S. & R. 393; Gilpin *v.* Consequa, 1 Pet. C. C. R. 85; Willing *v.* Consequa, Id. 179, Sedgwick on Dam., 377; McIlvaine *v.* Wilkins, 12 N. H. 475.    12th, 17th and 18th errors—as to Mrs. Burson's release and the acquiescence of herself and husband: McKellip *v.* McIlhenny, 4 Watts 317; Rerick *v.* Kern, 14 S. & R. 267; Le Fevre *v.* Le Fevre, 4 Id. 241; Towers *v.* Hagner, 3 Whart. 48; Act of April 11th 1848, § 6, Pamph. L. 536, Purd. 699, pl. 11; Bear *v.* Bear, 9 Casey 528; Penna. Co. *v.* Foster, 11 Id. 136; Fethplace *v.* Gorges, 1 Ves. Jr. 46, 2 McQueen on Husband and Wife 294; Wagstaff *v.* Smith, 9 Ves. 520, Bell on Husband and Wife 494; Dallam *v.* Wampole, 1 Peters C. C. R. 116; Sharpless *v.* W. Chester, 1 Grant 257; Glass *v.* Warwick, 4 Wright 140; Couch *v.* Sutton, 1 Grant 114; Fulton *v.* Moore, 1 Casey 468.    14th and 15th errors—as to defects in the report of viewers: Penna. Railroad *v.* Porter, 5 Casey 165; O'Hara *v.* Penna. Railroad, 1 Id. 445; Zack *v.* Penna. Railroad, Id. 394.

*S. S. Dreher* and *W. Darlington*, for defendants in error, referred to the same Acts of Assembly.    On appeal, all the previous proceedings go for nothing: Lentz *v.* Stroh, 6 S. & R. 34; Thompson *v.* White, 4 Id. 140; Le Barron *v.* Harriott, 2 Penna. R. 154; Sullivan *v.* Weaver, 9 Barr 223; Waage *v.* Weiser, 5 Whart. 307; Lange *v.* Stouffer, 4 Harris 253; Royer *v.* Myers, 3 Id. 89.    As to the Statute of Limitations: The act of incorporation fixes no limitation.    Limitation of suits for penalties does not apply to land damages: Foster *v.* Cumberland Val. Railroad, *supra*.    This case was by a divided court, and stands alone.    It was the duty of the company to have damages assessed, and they cannot take advantage of their own wrong: Railroad *v.* Gesner, 8 Harris 240; Wadhams *v.* Railroad, 6 Wright 310; Union Canal Co. *v.* Woodside, 1 Jones 180.    The proceeding was commenced within six years of the completion of the work.

The opinion of the court was delivered, May 11th 1869, by
THOMPSON, C. J.—Following the order of the argument of the counsel for the plaintiff in error, we will first notice the 2d, 3d and 4th assignments of error.    They relate to the plea of the Statute of Limitations, interposed to prevent the plaintiffs below from recovering or having an assessment of damages done

their intestate's property by the location and construction of the defendants' railroad through and over it.

Without stating the points made in the court below, to raise the question, and with the simple remark that the counsel themselves seem to have difficulty in assigning the limitations to any statute, we will notice this ground of defence.

They asked the court, in their 4th point, to charge that if these proceedings were under the General Railroad Act of 1849, the limitation of two years applicable to penalties incurred and to be sued for under that Act would bar proceedings to assess damages for taking the plaintiffs' property.

There were two reasons why an affirmation of this point would have been error:—

First, the proceedings were not under the Act of 1849. That act gives no appeal, and this was a trial of an appeal. Second: Damages are assessed to compensate the party whose property is taken, not to punish the party authorized by law to take it. If the amount assessed as damages were to be regarded as a penalty, the parties engaged in the taking, and bound to pay, would, as a logical consequence, be liable to imprisonment for delay of payment a moment after failure to satisfy the necessary legal demand. There is no case rightly understood which gives sanction to such an idea. The remark in Foster *v.* The Cumberland Valley Railroad Co., 11 Harris 371, if it be supposed to intimate that damages by way of compensation are in the nature of a penalty, it was not the question in the case, and is not supported by authority or reason. Indeed, it appears in a mere supposititious form, and not the expression of an opinion. These remarks are as applicable to the clause limiting suits for penalties under the Act of the 7th April 1832, incorporating the Liggett's Gap Railroad Company. In that act, as well as in the Act of 1849, there are things prohibited to which penalties are annexed, but it is mere fancy to claim that the assessment of damages is among them.

But it was confidently and earnestly insisted that the Act of 27th March 1713, familiarly known as the Limitation Act, was a bar to a claim for compensation for damages done by the Railroad Company in taking private property for the use of their road. The words of that statute seem to me to be the best answer to the argument. They are " all actions of trespass *quare clausum fregit*, all actions of detinue, trover and replevin, for taking away goods and cattle ; all actions upon account, upon the case, &c., * * * * * shall be commenced and sued within the time and limitation hereafter expressed and not after ; that is to say, the said actions upon the case other than for slander, and the said actions for account, and the said action for trespass, debt, detinue and replevin for goods or cattle, and the said actions of trespass *quare*

*clausum fregit*, within six years next after the cause of such action or suit, and not after," &c.

I think it is not susceptible of doubt that the legislature meant only to limit suits and actions known to common-law proceedings or forms of action. The case we are considering is a statutory proceeding exclusively, although common-law forms may be used in the process of the pleadings on appeal. There is no original writ or *narr.*, and if on the trial the defendant puts in a defence in the shape of a plea, it is for the convenience of the trial; it does not change the proceedings into a common-law action. In Foster *v.* The Cumberland Valley Railroad Co., the Statute of Limitations was extended to a case of assessment of damages, under an act of the 2d April 1831, to incorporate the Cumberland Valley Railroad Company. This point of the case was not sustained by authority, but was rested on the ground, that as the land taken was taken without compensation first made, it was a trespass, and the proceeding was essentially an action of trespass. There may have been peculiarities about the case, and we do not say but that it was well decided, but the principle has not been followed in this state as a rule in any other cases of assessment of damages for taking property. The defendant has no right to complain of delay as a reason for invoking the statute; the company might and ought to have proceeded and had the damages assessed and paid them, if it did not intend that the plaintiff's intestate might take her time to test the damage, inconvenience or otherwise, that the road would be to her property before proceeding. The defendant can meet these questions at one time as well as another; and the reason for the application of the rule of the statute in such a case is very much less strong as in most, if not every case of trespass. We do not, therefore, think the court erred in refusing to affirm the defendant's ninth point on general principles. Again, the point might well have been refused, because it assumed facts which the jury only could properly pass on; namely, whether more than six years had elapsed before the commencement of the proceedings after the completion of the road. The plaintiff's intestate had a right to wait, before proceeding, until the completion of the road, even if the statute applied. Certainly the proof very clearly showed that she did commence within six years after the construction of the road was completed. In both aspects therefore the court was right in its answer to the point.

I perhaps ought not to omit noticing that the Act of 1866, Pamph. L. 106, limits the right to proceed for the recovery of land damages under the various statutes to five years. That act has no further application to the case in hand, than it is strongly implicative that in the minds of the legislature no limitation existed by any antecedent law, and we concur in that.

The 1st, 5th, 13th and 14th assignments will be considered together. They all relate to the regularity of the initiatory proceedings. We do not feel called on to determine the question as to the exact act under which the proceedings should have been, or were commenced. They were commenced by a petition and appointment of viewers, by a court of competent jurisdiction, and the viewers made a report which was confirmed, and from that the company appealed. If it intended to stand on irregularities in the record of the initial proceedings, it should have taken a certiorari and had the proceedings set aside if irregular. The appeal waived this, and now after three trials, we are asked to go back to correct alleged irregularities in the inception of the proceedings.

The Acts of 1832 and 1838, contended for as furnishing the rule for the institution of proceedings in the case, by the counsel on the opposite side, contain the same provisions for an appeal, namely, " That either party may appeal to the court within thirty days after such report may have been filed in the prothonotary's office of the proper county, in the same manner as appeals are allowed in other cases." It is very evident from the phraseology of the provision, that it was supposed that the appeal was to be regulated by the rules in other cases of appeal for the trial of questions of property. Indeed it is not possible to distinguish it from the effect due to an appeal from an award of arbitrators, so far as the acts of the parties are concerned. If an appeal in the one case means a waiver of another possible remedy, why shall it not in the other? If appeal is an inconsistent remedy to correct an error in an award with a writ of error, why is it not so in an award made by appraisers of damages? I presume it will not be seriously contended that an appeal and writ of error will both lie to an award. In other words, that after an appeal taken from an award and trial, a writ of error will lie to the award, or to the appointment of the arbitrators. That remedy is lost in the other which has been adopted. In Royer v. Myers, 3 Harris 87, it was said that the only remedy is by an appeal from the award of arbitrators, even where there is error alleged in the form of the writ or the *narr*." Without assenting to this in its length and breadth, it is undoubtedly true that the appeal when taken is the only remedy. It is not to be doubted, however, but a writ of error will lie to a judgment on an award of arbitrators. The rule in a question like the present was well and distinctly stated in Lentz v. Stroh, 6 S. & R. 34. " This court," said Duncan, J., in delivering the opinion of the court, " cannot in this writ retrospect to the regularity of the award, and reverse all the proceedings on the appeal because there was error in entering the rule or in the award itself." This so fully explicates the rule and practice on this subject that we will not enlarge on the principle with which we set out.

The defendants having appealed and pleaded to the plaintiff's cause of action, and given in evidence all it could to defeat the plaintiff's case, cannot now allege that all this while it was merely experimenting, and that its own appeal was void, the foundation for it being irregular. In Weaver's Road, 9 Wright 405, something like this was tried. A private road was laid out and confirmed, and the plaintiff in error proceeded to have an assessment of damages, but no damages being awarded him, he sued out a certiorari to the original proceedings. These facts were specially replied in this court to the assignment of errors to the regularity of the original proceedings, and not being denied the plaintiff was held to be estopped. For these reasons, and many more which might be given, we think the court was right in its rulings embraced in these assignments of error.

The 6th, 15th and 16th assignments we have also considered, and we feel very clear that the time to which the investigation was allowed to extend in judging of the advantages and disadvantages to the defendant's land was proper. The learned judge told the jury that the market value of the property in 1852 should be ascertained, if possible, from the evidence. " That is, the value of the entire property, before the road or the prospect of the road had produced any effect upon it. Then the value of it immediately after the completion of the road in 1856, and if this can be done it would settle the question." This was a fair and proper view of the subject. The inquiry was thus limited more nearly to the effect the road might be supposed to have had on the property than at any other time. If it enhanced the value in 1866, it was more certainly attributable to the road than in 1861, when there would be difficulty in ascribing the advance to the road, or to the general advance in the value of property by reason of that and other improvements constructed in the mean time. These views apply as well to the charge as to the offers rejected proposing to prove among other things the rate a portion of the property sold for in 1864. The rule adopted is essentially that approved in The East Penna. Railroad Co. *v.* Hottenstine, 11 Wright 28.

The 7th and 8th assignments of error are not sustained. The court instructed the jury that they could not allow as damages the cost of fencing, but that it was to be considered in estimating the value of the farm, and how much the burthen of fencing would detract from it. That would undoubtedly be an inquiry in comparing advantages and disadvantages. It was a tangible thing capable of some sort of estimate, and might be considered in the aspect in which it was presented by the learned judge. A purchaser would be very apt to claim something on this score if proposing to buy.

Nor was there error in charging the jury to allow interest. If

[Delaware, &c., Railroad Co. v. Burson.]

the plaintiff was entitled to compensation by reason of her property being taken at a particular time, she was certainly entitled to interest as a compensation for its wrongful detention. The company as well as the plaintiff could have had the damages assessed as soon as they pleased after locating the road, and it was no reason for withholding compensation that its amount was unknown or unascertained. As the company was the party to pay, it ought to have had the amount ascertained, and paid it (8 Harris 240); failing to do so, it has no right to complain at having to meet an incident of the delay in the shape of interest. The 9th, 10th and 11th assignments relate to the verdict. We have nothing whatever to do with them. The judgment is what we have to deal with, and not its elements, excepting in and through the control of that which leads to it, namely, the evidence and the charge of the court. The jury were not bound to itemize, nor the court to require it to be done. We will not spend further time with these exceptions, however. They are not within our province of review. The court below reduced the verdict nearly $2000; no doubt thinking to cure some of the objectionable items in the mind of the defendant.

The 17th and 18th errors relate to the rejection of the release signed by Deborah Burson and her daughter Danelia Burson. The latter claimed nothing in the court below. In fact, her name was by leave of the court withdrawn as a party. The former was a *feme covert* when she contracted to execute the release in question; and she entered into the covenant to release without being joined by her husband. As a contract, the agreement was utterly void; nor was she estopped by it. The company never called for it, and went on without paying any seeming attention to it. Had they called on her to execute the release they would probably have found some sufficient reason for her refusal. We need not examine whether in equity an agreement of such a nature would operate as an estoppel against a party *sui juris*. We have distinctly decided that a contract in regard to lands of the wife made during coverture will not operate by way of estoppel, and I need only cite for this the recent case of Glidden *v.* Strupler, 2 P. F. Smith, and the authorities therein referred to.

As to any of the assignments of error not specially noticed, they are embraced by what has been said, or are such as need not any special notice.

As the result of a laborious examination of the assignments of error in the case, we think the judgment should be affirmed, as none of them are sustained.

Judgment affirmed.