## Hannum *versus* The Borough of West Chester.

| | |
|---|---|
| 63 | 475 |
| 129 | 428 |
| 63 | 475 |
| 142 | 357 |

| | |
|---|---|
| 63 | 475 |
| 22 SC | 169 |

| | |
|---|---|
| 63 | 475 |
| 208 | 567 |
| d 25 SC | 363 |
| 63 | 475' |
| f220 | 498 |

1. As a general rule wherever the cause of action is such as would be subject to the bar of the Act of March 27th 1713 (Statute of Limitations), if prosecuted under any of the forms enumerated in that act, then the statute is applicable ; otherwise not.

2. It applies to proceedings in other courts and before other tribunals than those of the common law.

3. In regard to any actual taking by other than railroad companies, it seems, that under the constitutional provision, no title to the land or an easement over it is to be gained without payment of or security for the damages.

4. An occupation or use is a continuing trespass, for which ejectment, trespass or case would lie, unaffected by the bar of the statute as far as the right is concerned.

5. The statute limits only the period for which damages could be recovered to six years before the commencement of the action.

6. Nothing but adverse possession or use for twenty-one years would bar the right of action itself.

7. When a statute gives a new and special remedy, and precludes all others, the Statute of Limitations does not apply.

8. The Statute of Limitations is not a bar in any case of taking under the right of eminent domain: per Thompson, C. J., and Williams, J.

January 17th 1870. Before Thompson, C. J., Sharswood and Williams, JJ. Agnew, J., at Nisi Prius. Read, J., absent.

Error to the Common Pleas of *Chester county :* No 152, to July Term 1869.

The proceedings below were commenced by petition by the plaintiff for the assessment of damages sustained by him by the diversion of water from a creek running through his premises by the defendant. The water was taken by the borough under the authority of an Act of Assembly of April 16th 1838, by which the borough was authorized to purchase any water-power, and take

[Hannum *v.* Borough of West Chester.]

any stream of water or land to which such stream may be apper-
tenant, for the purpose of introducing water into the. borough.
For such taking the act provides that compensation to the owners
shall be made as follows; upon failure of the parties to agree upon
the compensation to be made, they shall choose six men to assess
the damages, or in case they cannot agree upon such persons, the
Court of Common Pleas, upon application of either party, shall
award a venire to the sheriff to summon six men to assess dam-
ages and report to the court, which report being confirmed by the
court, judgment to be entered thereon, either party to have the
right of appeal within thirty days; such proceedings to be had on
appeal, as are used in actions for damages at common law.

In the year 1854 the borough erected waterworks on the pre-
mises adjoining and above those of the plaintiff, and in the fall
of that year commenced taking water from the creek running
through the premises of the plaintiff, without having the damages
assessed under the Act of Assembly, or giving bond under the
Constitution of Pennsylvania.

On the 10th of December 1866, Samuel Hannum filed his peti-
tion to have an assessment of the damages, which he alleged he
had sustained by the taking of the water by the borough, upon
which the court awarded a venire to the sheriff, who summoned
six men, who on the 18th April 1867 reported that they valued
the damages sustained by the plaintiff at $330.   From this award
the plaintiff appealed, and on the trial of the cause, gave evi-
dence to show that he used his farm largely for the purpose of
stock grazing; that before the borough commenced taking water
from the creek, he had water sufficient for watering his stock and
other purposes; that after and during such taking, the water in
the creek was so much reduced that it became muddy, and insuf-
ficient for the necessities of his farm, and unfit for watering cat-
tle; that the cattle became diseased, in consequence of standing
and tramping in the muddy water, and that with the increase of
the borough, the consumption of water increased.

The plaintiff also offered evidence to show the probable conse-
quences of the stock running into the impure water; their often
getting diseased feet and other diseases.   This offer was rejected
by the court and a bill of exceptions sealed.

The evidence for the plaintiff being closed, the court directed a
nonsuit to be entered, on the ground that the Statute of Limita-
tions barred the plaintiff's right to recover, he having failed to
bring his action within six years from the time of the first taking
of the water.

The court (Pearson, P. J.) delivered the following opinion :—

" The complaint in this case was commenced by petition, an in-
quest appointed, taken, reported to court, and an appeal entered
therefrom.   It was understood that the case was to be tried on

[Hannum v. Borough of West Chester.]

the facts stated in the petition on the one hand, and without plea on the other, but that the plea of *actio non accrevit infra sex annos,* should be considered as put in on the morning of the inst., when the cause was called on. In cases of this character, the damages are to be assessed, not only for the past injury, but for all time to come: see 7 S. & R. 411. The evidence shows that the water was diverted from the stream for the use of the borough, in the year 1854, and has been used in the same way ever since. That the injury of the plaintiff was as full in the year 1856, as at any other time since, and that he was put to the same inconvenience every dry season, especially in 1866; that the Statute of Limitations is applied to damages done in the construction of a railroad, is clearly settled in Foster v. The C. Valley Railroad Co., 11 Harris 371, and is in like manner held in Redfield on Railroads, § 23.

"That the owner of property can have but one action, and the damages cannot be severed, is decided in Wadhams v. Lack. & B. Railroad Co., 6 Wright 410. The time when this injury was done, its extent and character, was well known to the plaintiff, and if he desired to maintain an action, he should have commenced it within a reasonable time. A delay of six years operates as a bar, and here it exceeds double that period.

"The court directs a nonsuit to be entered."

The plaintiff took a writ of error, and assigned for error the rejection of the offer of evidence and the entry of the nonsuit.

*J. Smith Futhey* and *P. Frazer Smith* (with whom was *Geo. F. Smith*), for plaintiffs in error, as to the rejection of evidence, cited Western Pa. Railroad v. Hill, 6 P. F. Smith 460; Wilmington & Reading Railroad v. Stauffer, 10 Id. 374. As to the Statute of Limitations: Western Pa. Railroad v. Johnson, 9 P. F. Smith 290; Del., Lack. and Western Railroad v. Burson, 11 Id. 369.

*W. Mac Veagh* and *W. Darlington,* for defendant in error, cited Wadhams v. L. & B. Railroad, 6 Wright 310; Angell on Limitations 24; Hoveden v. Lord Annesley, 2 Sch. & Lef. 329; 2 Story's Eq. § 1520; Farnam v. Brooks, 9 Pick. 242; McCrea v. Purmont, 16 Wend. 460; People v. Everest, 4 Hill 71; Humbert v. Trinity Church, 24 Wend. 594; Bank v. Daniels, 12 Pet. 56; Foster v. Railroad, 11 Harris 371; Del., L. & W. Railroad v. Burson, *supra.*

The opinion of the court was delivered, January 31st 1870, by
SHARSWOOD, J.—The Act of March 27th 1713, 1 Smith 76, for limitation of actions, copied from 21 Jac. 1, c. 16, includes in its enumeration all forms of personal actions in use, but it provided

[Hannum *v*. Borough of West Chester.]

that the time should be reckoned from the cause of action or suit, and not after. Hence most probably the construction, which has been uniformly received, that it is not the form, but the cause of action which is to be considered: and it may be stated as a general rule that wherever the cause of action is such as would be subject to the bar if prosecuted under any of these forms, then the statute is applicable: otherwise not. "It is the nature of the cause of action," says Mr. Justice Agnew, "such as a legacy, a foreign judgment, a widow's interest, an award at common law or a distributive share, rather than the form of action, which determines the applicability of the statute:" De Haven *v*. Bartholomew, 7 P. F. Smith 129. Accordingly it has been uniformly held to apply to proceedings in other courts, and before other tribunals than those of the common law, though the words of the statute are evidently confined to the latter: and this not merely by analogy as has been sometimes inaccurately stated, but because the true spirit and intent of the statute requires that the rule should be uniform. "It is said," remarks Lord Redesdale, "that courts of equity are not within the statutes of limitation. This is true in one respect: they are not within the words of the statutes, because the words apply to particular legal remedies: but they are within the spirit and meaning of the statutes, and have been always so considered. I think it is a mistake in point of language to say that courts of equity act merely by analogy to the statutes; they act in obedience to them:" Hoveden *v*. Lord Annesley, 2 Schoale & Lefroy 629. The justice of this observation has been always since acknowledged: 2 Story's Eq. 1520; Bank *v*. Daniels, 12 Peters 56; Humbert *v*. Trinity Church, 24 Wend. 594. "I do not say," remarks Sir William Scott, "that the Statute of Limitations extends to prize causes; it certainly does not: but every man must see that the equity of the principle of that statute in some degree reaches the proceedings of this court:" The Mentor, 1 Rob. 180. It follows that the bar of the statute is applicable, though the legislature may provide new and special proceedings in cases, which before were remedied in the common-law forms: for it cannot be supposed that a virtual repeal of the statute was intended: Farnam *v*. Brooks, 9 Pick. 242. The inquiry must then be what would have been the form of action at common law, if the special tribunal and proceeding had not been provided. If in such form there would have been a bar, it will still continue.

It is not necessary to consider the case of an actual taking of property by a corporation in virtue of the right of eminent domain, under an authority granted by the sovereign. The Act of April 17th 1866, Pamph. L. 106, has enacted "that no suit or action shall be brought against any railroad company, incorporated by the laws of this Commonwealth, for damages, for right of way or

use and occupancy of any lands by said company, for the use of their railroad, unless such suit or action shall be commenced within five years after said lands shall have been entered upon, for the purpose of constructing said road, and within three years after said road shall be in operation." As to how far the construction of this act is to be affected by the fourth section of art. vii. of the constitution I say nothing. In regard, however, to any actual taking by other than railroad companies, it rather seems to me that under this constitutional provision no title to the land or an easement over it is gained without payment of or security for the damages. An occupation or use must be regarded as a continuing trespass, for which ejectment, trespass or case would lie unaffected by the bar of the statute as far as the right is concerned. It would operate only to limit the period for which damages could be recovered to six years before the commencement of the action. Nothing but adverse possession or user for twenty-one years would bar the right of action itself. It would follow then that when a statute gives a new and special remedy, and precludes all others, the Act of Limitations does not apply. If there can be but one such proceeding, instead of successive actions, then the consequence that entire damages must be given, measured by the depreciation of the property, instead of merely the actual damage sustained for a limited period, ought to make no difference in the result.

The case before us is not that of an actual taking, but of consequential damages: the right to recover which the legislature might have withheld altogether, but they did not choose to do so. By the Act of April 16th 1838, Pamph L. 477, and the supplement thereto of March 23d 1839, Pamph. L. 129, in conferring upon the borough of West Chester the powers necessary for the purpose of introducing a sufficient supply of fresh and pure water, they provided a mode of ascertaining and recovering damages " to any person or persons who may be injured by the diversion of the waters that may be used by the said borough for the purposes aforesaid." Had the borough of West Chester, without the express authority of law, undertaken to divert the waters of Chester creek, they would have been liable to the plaintiff for any damage sustained by him in consequence of such illegal act in an action of trespass on the case. Until such a period of time had elapsed as that the plaintiff's right to the uninterrupted flow of the water would have been lost or extinguished by adverse user—he could have maintained actions to recover the damages from time to time as they accrued: for it would have been a continuing wrong or nuisance. There is no ground for the presumption that the legislature in providing the special remedy meant to subject him to any new bar from lapse of time, which would not have existed independently of it. They meant, indeed, that instead of successive

[Hannum *v.* Borough of West Chester.]

actions on the case there should be but one proceeding; the judgment in which should be in effect a transfer to the borough of all his right to the waters of the creek, which might be needed for the purposes in contemplation. This indeed calls necessarily for a new rule for the assessment of the damages, but creates no new bar from lapse of time. If it were so he would be deprived of his common-law remedy, and nothing effectual would be substituted for it. For suppose, as may well have been the case, that when the borough first began to divert the water, it was in quantity so small that the value of the plaintiff's farm was not sensibly affected. Apart from the lawful authority vested in the borough he might perhaps have maintained an action at common law without proving any damage, on the principle of the Tunbridge Wells Dipper's Case, 2 Wils. 422—adopted by this court in Williams *v.* Esling, 4 Barr 486—in order to establish his right to the water, and prevent the acquisition of an adverse right by the defendants, grounded on his acquiescence in their use, but he certainly was not bound to do so. He had a period of twenty-one years in which in that view he might safely remain inactive. On the other hand, it was always in the power of the borough, by instituting proceedings themselves against any owner of lands through which the creek runs, to acquire his right, if they could not have accomplished the same thing in a more inexpensive mode by purchasing releases at the outset. It is no answer to this to refer to the extent of the course of the stream, and the number of landholders through whose property it runs, and the want of knowledge or notice to the borough of any claim for damages. They must be intended to foresee and know all the natural consequences of their acts, and it was their duty to govern themselves accordingly. We think, therefore, that the learned judge below erred in entering a nonsuit.

We are of the opinion that he was right in rejecting the evidence offered to prove the probable consequences of cattle running into the impure and stagnant water. Its effect upon the value of his farm was too vague, remote and uncertain, to form an element for the estimation of the damages by the jury.

Judgment reversed, and *procedendo* awarded.

THOMPSON, C. J.—I agree to the reversal of this case, but do not agree that the statute of limitation of actions is a bar in any case of taking under the right of eminent domain.

WILLIAMS, J.—I concur with the Chief Justice.