# B. BROWER ET AL. v. CITY OF PHILADELPHIA.

## APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued March 24, 1891—Decided May 18, 1891.
[To be reported.]

(a) The act of April 28, 1870, P. L. 1291, widened Chestnut street, Phil-
adelphia, by moving its south line five feet farther south, with a proviso
that the act should not interfere with existing buildings. In 1884, a city
ordinance directed the revision of the city plan, by placing the new line
thereon, and required that buildings thereafter erected should conform
to it.

(b) In 1870, plaintiff's testator owned and occupied a lot on the south side
of Chestnut street, which lot was not built upon, but was enclosed by a
fence standing upon the original street line. Such enclosure and occu-
pancy continued until 1886, when plaintiffs erected buildings upon the
lot, setting them back to the new line, and the city took possession of
five feet of the lot :

1. The act of 1870 did not effect, ex proprio vigore, a present appropria-
tion of the land to public use. No actual appropriation took place until
the city went into possession ; and therefore, until then no right of action

Statement of Facts.

to recover compensation accrued to the owner, and the statute of limitations did not begin to run against such right: Smedley v. Erwin, 51 Pa. 445, distinguished.

Before Paxson, C. J., Sterrett, Green, Clark and Williams, JJ.

No. 139 January Term 1891, Sup. Ct.; court below, No. 790 December Term 1888, C. P. No. 2.

On September 1, 1888, Bloomfield Brower, and others, trustees under the will of Edwin Greble, filed a petition in the Court of Quarter Sessions praying for the assessment of damages for the appropriation of five feet of a certain lot of ground, in the widening of Chestnut street. On January 10, 1889, the plaintiffs filed in the Court of Common Pleas No. 2 an appeal from the award of viewers appointed in said proceeding, and thereupon an issue was framed to determine the damages, if any, due to the owners of said premises by reason of the widening of Chestnut street at that point.

At the trial on January 24, 1890, the following facts were shown:

In 1848, Edward Greble became the owner of the lot of ground in question, having a frontage of forty-four feet on the south side of Chestnut street, between Seventeenth and Eighteenth streets, and a depth of one hundred and fifty feet. By his will, duly admitted to probate October 30, 1883, said lot was devised to Bloomfield Brower and others, trustees. The act of April 28, 1870, P. L. 1291, ordained "That the south line of Chestnut street between the rivers Delaware and Schuylkill shall be at the distance of 539 feet southward of the south side of Market street: Provided, that this act shall not interfere with any buildings now erected on the south side of Chestnut street." Before the passage of this act, the street was fifty feet wide, and its south line was distant 534 feet from the south side of Market street.

On March 31, 1884, the city councils enacted an ordinance providing as follows:

"§ 1. Councils do ordain, that the department of surveys be, and is hereby authorized to revise the city plan so as to make Chestnut street, from the Delaware river to the Schuylkill river, of the width of sixty feet, widening equally on both sides from the old centre line.

" § 2. After the confirmation and establishment of said line, it shall not be lawful for any owner or builder to erect any new building, or to rebuild or alter the front of any building now erected, without making it recede so as to conform to the lines established for a width of sixty feet."

In pursuance of this ordinance, a revised plan was made as therein directed, which was confirmed on March 2, 1885.

At the time of the passage of the act of 1870, and down to July, 1886, the plaintiff's lot was used as a marble-yard and was enclosed at the front by a fence standing upon the original line of Chestnut street. In July, 1886, the plaintiffs erected buildings upon the premises, setting them back to conform to the then established line of the street, thus surrendering five feet along the front to the use of the city.

At the close of the testimony, the court, PENNYPACKER, J., submitted the question of damages to the jury, reserving the question:

" Whether the action in this case is barred by the statute of limitations, it being an admitted fact that at the time of the passage of the act of April 28, 1870, there were no buildings on the plaintiffs' lot affected in anywise by the widening, and the action in this case not having been brought till September 1, 1888."

The jury returned a verdict for the plaintiffs for $2,200, subject to the opinion of the court upon the question reserved. After argument, the court, PENNYPACKER, J., entered judgment for the plaintiffs on the question reserved: Brower v. Philadelphia, 26 W. N. 270; whereupon, the defendant took this appeal, specifying that the court erred:

1. In entering judgment on the point reserved for the plaintiffs.

2. In not entering judgment for the defendant, non obstante veredicto.

*Mr. Abraham M. Beitler* (with him *Mr. Charles F. Warwick*, City Solicitor, and *Mr. James Alcorn*), for the appellant:

1. It is submitted that the act of April 28, 1870, P. L. 1291, took and appropriated five feet of the Greble lot for a highway. Thereafter, the strip so appropriated was legally a part of the street. The right to recover damages was complete at the date

Arguments.

of the act: Smedley v. Erwin, 51 Pa. 445; Hammett v. Philadelphia, 65 Pa. 166; Edgewood R. Co.'s App., 79 Pa. 257;
Ridge Ave., 99 Pa. 475; Philadelphia v. Wright, 100 Pa. 238;
East Union Tp. v. Comrey, 100 Pa. 362; Philadelphia's App.,
78 Pa. 33; Philadelphia v. Linnard, 97 Pa. 242; Chestnut St.,
118 Pa. 600. It is true, the owner maintained a fence upon
the old line for years, but this was an unauthorized use of the
highway, and gave him no title as against the commonwealth.
The removal of it by the plaintiffs did not constitute a taking
by the city of the ground between the fence line and the line
established in 1870, nor had that ground, subsequent to 1870,
been in the legal possession of the plaintiffs or their testator.

2. It having been frequently decided that the act of 1870 was
a taking, it follows that the statute of limitations began to run
at its date. We contend that § 7, act of June 13, 1836, P. L.
556, applies and rules this case. It provides that the owner of
any land, through which a public road shall be opened, may
apply for the assessment of damages within one year from the
opening of the same. That act applies to Philadelphia: Ridge
Ave., 99 Pa. 469; Philadelphia v. Wright, 100 Pa. 235. It is
clear that damages are to be assessed as of the time of the taking: Mills on Em. Dom., § 174. Every statute of limitations
begins to run when the right accrues: Chitty on Cont., 795.
And there was nothing done after 1870 which, as to this lot,
was a taking. By the act of 1870, the commonwealth took and
appropriated five feet of the lot, and the fact that the city authorities and the commonwealth permitted the owner to maintain a fence five feet over the sidewalk, until he chose to
remove it, did not affect the rights so acquired.

*Mr. Silas W. Pettit* (with him *Mr. John R. Read*), for the
appellees:

It is conceded that there was no actual taking in this case
until 1886, and the sole question is, whether there was such a
technical taking in 1870 as will bar the present action.

1. The act of April 28, 1870, P. L. 1291, was not a taking
in law, any more than it was in fact. Its provisions are substantially different from those of the act considered in Smedley
v. Erwin, 51 Pa. 445, directing the opening of a street within
thirty days after its passage. The act of 1870 made no pro-

Opinion of the Court.

vision for taking land then unbuilt upon, and as to land upon which buildings were then erected it postponed action until such buildings should be taken down. In other words, the act was a plotting, and not a taking in præsente. And this was in accord with the mode of proceeding usual in Philadelphia: Sedgeley Ave., 88 Pa. 509. It is well settled that such an inchoate taking, by laying out and plotting public streets, gives no right of action: Pittsburgh Dist., 2 W. & S. 320; Stewart v. County, 2 Pa. 340; Philadelphia v. Dyer, 41 Pa. 463; Philadelphia v. Dickson, 38 Pa. 247; Easton Bor. v. Walters, 18 W. N. 117; Lewistown Road, 8 Pa. 109; Forbes St., 70 Pa. 125; Jarden v. Railroad Co., 3 Wh. 502.

2. In any event, the landowner was not bound to bring his action until his land was taken in fact. The limitation prescribed by the act of March 27, 1713, 1 Sm. L. 76, does not apply to proceedings for the recovery of damages for land taken by eminent domain, and there is no general limitation in Pennsylvania to such a claim: Delaware R. Co. v. Burson, 61 Pa. 369; Hannum v. West Chester Bor., 63 Pa. 475; McClinton v. Railway Co., 66 Pa. 404. The general road law of June 13, 1836, P. L. 556, does provide, in § 7, a limitation where land is taken for a road, to wit, " within one year from the opening of the same." This means the actual physical opening: Easton Bor. v. Walters, 18 W. N. 117; Lewistown Road, 8 Pa. 109; Jarden v. Railroad Co., 3 Wh. 502. This period of one year was extended to six by the constitution: Grape St., 103 Pa. 121. In so far as Ridge Ave., 99 Pa. 469, and Philadelphia v. Wright, 100 Pa. 235, hold that the limitation imposed by that section runs from the confirmation of the plan, they have no application to the case in hand, for those cases were actions for damages caused by a change of grade, and in such cases the right of action was expressly given by act of February 2, 1854, P. L. [21], " for the alteration of the grade regulation," but were to be ascertained and paid " as in cases for opening of streets," and therefore to be applied for within one year from the alteration: Fifth and Sixth Sts., 4 W. N. 443.

OPINION, MR. JUSTICE WILLIAMS:

The lines of Chestnut street in Philadelphia had been settled for many years prior to 1870, and the occupancy by the

lotowners and by the public had conformed to them. In that year, the legislature had increased the width of the street from fifty to fifty-five feet, by carrying the south line five feet over on the lotowners, with a proviso that the new line should not disturb existing buildings. Nothing was done by the city to carry this act into effect until 1884, when an ordinance was passed extending the width of Chestnut street to sixty feet, and directing the department of surveys to revise the city plan accordingly. This involved a removal of the north line of the street five feet over on the lotholders, and the adoption of the south line fixed by the act of 1870. The ordinance provided that after the new lines were thus established it should not be lawful for any person or builder "to erect any new building, or rebuild or alter the front of any building now erected, without making it recede so as to conform" to the new lines. In obedience to this ordinance, the department of surveys in March, 1885, revised the city plan by putting upon it the new lines of Chestnut street.

When the act of 1870 became a law, Greble owned a lot on the south side of Chestnut street, between Seventeenth and Eighteenth streets, with a front of forty-four feet. It was then occupied as a marble-yard, at which the manufacture and sale of monuments, head-stones, and other marble-work were carried on. The foot pavement extended up to the old line of the street, upon which there was an iron fence. On the other side of the fence, the lot was occupied as a marble-yard, and work ready for sale or removal was displayed along and near to the fence. This actual enclosure and occupancy existing when the act of 1870 was passed continued down to 1886, when a block was erected on the new street line covering the entire front. The city took possession of the strip of land thus surrendered, and in 1888 the owner presented the petition in this case, asking for an assessment of his damages. Proceedings were had, and a judgment recovered against the city for the value of the land, from which this appeal was taken, alleging that the plaintiffs' demand is barred by the statute of limitations. The appellant contends that the act of 1870, ex proprio vigore, appropriated the plaintiffs' land to the use of the public, and that the statute began to run against them at once, so that at the end of six years from the approval of the act of 1870 their action was barred.

Opinion of the Court

There is a certain limited and popular sense in·which it may be said that the act did appropriate the plaintiffs' land, but it was not a present or an actual appropriation.   No means were provided for carrying the act into operation, and no time fixed within which the owner should retire from the possession.   The legislature may be said to have designated or set apart the space between the old and new south lines for public use when the city should decide that it was necessary to take it, but the time when and the manner in which an actual appropriation should be made was left to the city to determine.   For fourteen years the city did not determine, and the status remained undisturbed.   The ordinance of 1884 did no more than to mark the new line on the city plan, and to require that buildings thereafter erected should conform to it.   The power to enter upon the land, which the act of 1870 gave, was exercised so fast and so far as building was done, for then, and not until then, it became the duty of the owner to recede from the old to the new line, and surrender the intervening space to the city.   When he did this his right of action accrued, and not before.

It is urged that a contrary doctrine is held by Smedley v. Erwin, 51 Pa. 445, but we do not so understand that case. The act that came under consideration in Smedley v. Erwin ordained and fixed the limits of a street in Philadelphia, and directed the commissioner of highways to proceed and open it for public use within thirty days.   The act was not permissive, but directory.   It left nothing to the judgment or decision of the city councils or the courts, but laid a legislative injunction upon the commissioner to open a street for public use upon a location absolutely fixed in the act itself.   This was an appropriation of the land covered by the street by the legislature, and the only thing left for the city or the courts to do was to ascertain its value, and make compensation to the owners.   The act of 1870 lays no command on the.city or its officers.   It fixes the south line of the street so as to settle any possible question about the legality of widening it, but it leaves everything else to the city.   Whether the city shall avail itself of the new line, and, if so, when, to what extent, and in what manner, are questions over which the city has absolute control within the general limits fixed by law.   These

questions have been considered and determined by the city in the ordinance of 1884; and the plan adopted for widening Chesnut street is a wise and conservative one. Existing structures are not interfered with. New ones must go upon the new line. When the owner recedes in this manner from the old line, the city advances and enters into possession of the five feet additional, and then for the first time an actual appropriation takes place, and a right of action accrues. This gradual process is not oppressive to lot owners nor burdensome to the city. As was said by the present Chief Justice, in Chestnut St., 118 Pa. 593 : " It will probably occupy nearly a hundred years. It is done gradually, and in a way to produce no great strain on the city treasury." The city can be called upon to pay only for its own act of appropriation, and not until such appropriation takes place : Hannum v. West Chester Bor., 63 Pa. 475 ; Volkmar St., 124 Pa. 320. The learned judge was right in his disposition of the reserved point, and

The judgment is affirmed.