# Philadelphia Parkway.

*Municipalities—Eminent domain—Opening streets — Property owners—Assessment of damages — Parkway — Statute of limitations.*

1. The mere plotting of a street upon a city plan, without anything more, does not constitute the taking of land in the constitutional sense, so as to give an abutting owner the right to have damages assessed, the marking of a new street upon a city plan being nothing more than an expression of intention to take the land when the occasion arises for opening the street as a public highway.

2. The passage of an ordinance is not the only way by which a projected street may be opened. It may be opened by unequivocal acts evidencing an intention to open, followed by actual work done on the projected street.

3. The general rule is that the statute of limitations has no application to a proceeding to assess damages for property taken, injured or destroyed in the exercise of the right of eminent domain, and the exceptions to the rule are based upon facts and circumstances peculiar to the cases in which they arise.

4. Upon petition of an owner of property lying within the lines of a proposed parkway in a city, asking for the appointment of viewers to assess its damages, it appeared that the parkway was placed upon the city plan more than twelve years before the presentation of the petition; that it was a general municipal improvement intended for the use and enjoyment of the public; that one of its termini was at the city hall and the other in a public park; some properties in the line of the parkway had been taken by condemnation, some had been acquired by purchase, some buildings had been torn down, some work had been done on parts of the parkway, some improvements intended to add beauty had been constructed, and a portion of the parkway was open to public travel. *Held,* (1) the parkway must be regarded as one entire improvement, to which the city had committed itself as fully as if councils had declared their intention to open by passing an ordinance, (2) that the statute of limitations had no application to the case, and (3) that the court was in error in dismissing the petition for viewers.

Mr. Justice Moschzisker dissents.

Argued March 30, 1915.   Appeal, No. 98, January T., 1915, by the General Synod of the Reformed Church in America, from order of Q. S. Philadelphia Co., quashing petition for the appointment of viewers in the matter of the opening of the avenue or parkway between City Hall and Fairmount Park.   Before Mestrezat, Potter, Elkin, Moschzisker and Frazer, JJ.   Reversed.

Petition for the appointment of viewers to assess damages resulting from the opening of the parkway.   Before Ferguson, J.

The opinion of the Supreme Court states the facts.

The court quashed the petition.   The General Synod of the Reformed Church in America appealed.

*Error assigned* was the order of the court.

*Joseph deF. Junkin,* for appellant.

*Edwin O. Lewis,* Assistant City Solicitor, with him *Otto Wolff, Jr.,* Assistant City Solicitor, and *Michael J. Ryan,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE ELKIN, July 3, 1915:

Appellant owns a lot of ground wholly within the lines of the proposed parkway, upon which was erected many years ago a three story dwelling house. In response to popular sentiment, based upon the spirit of civic pride, the municipal authorities laid the foundation for this comprehensive and costly public improvement in 1903. At that time the original ordinance was passed to place the parkway upon the city plan, and this was followed by an amending ordinance a year later. Following these ordinances, the department of public works in 1904 through its board of surveyors by resolution in due form directed the plotting of the parkway upon the confirmed plan, and this was accordingly done. Since that time the city by condemnation or purchase has acquired title to various properties within the lines of the confirmed plan and has expended upwards of $5,000,000 in paying for the same. It is therefore committed to this improvement, which it intends to complete at its own convenience, without regard to the equitable or legal rights of abutting owners whose properties lie within the lines of the parkway or adjacent thereto. The city asserts the right to thus proceed on the theory that until councils pass an ordinance to open the boulevard, a property owner, no matter what injury he may have sustained, does not have the right to have his damages assessed; and this upon the ground that such action is necessary to constitute a taking of property for public use. This is the general rule, but let us see whether it applies to the present case. Here some properties have already been taken by condemnation; some have been acquired by purchase; some buildings have been torn down; some

work has been done on parts of the parkway; some improvements intended to add beauty have been constructed; and in short many of the necessary steps have been taken looking to the completion of a boulevard in keeping with the progressive spirit of a metropolitan city. These things have been done at intervals during the past ten or twelve years while the great majority of the property owners waited for the city to do something to relieve them from the hardships of the situation in which they were placed through no act or fault of their own. In this situation appellant undertook to get relief and presented its petition in the court below asking for the appointment of viewers to assess its damages. The city moved to quash on the ground that until an ordinance to open was passed (and there was none in this case) there was no taking within the meaning of the law; and, if, nothing was done to constitute a taking of or injury to property of appellant in the constitutional sense, it was premature to ask for the appointment of viewers to assess damages. It must be conceded that there is a long line of cases relating to the laying out, opening, widening and grading streets, lanes and alleys in the municipalities of the Commonwealth which sustain this position. The binding force of these decisions as applied to the ordinary plotting of a proposed new street over unimproved land, or as to the widening and grading of streets already established, is frankly conceded by learned counsel for appellant; but it is strongly urged that the rule of these cases, and the underlying principle upon which the doctrine is based, has no controlling effect under the facts of the case at bar. In other words that the present case presents a situation not contemplated either by the rule or reason of the decided cases. This raises a sharply defined issue and one requiring careful consideration. The following may be regarded as the leading cases relied on to sustain the contention of the city: District of the City of Pittsburgh, 2 W. & S. 320; Forbes Street, 70 Pa. 125; Whitaker v. Phœnix

ville Borough, 141 Pa. 327; Plan 166, 143 Pa. 414; Bush v. McKeesport, 166 Pa. 57; South Twelfth Street, 217 Pa. 362. These cases do hold that the mere plotting of a street upon the city plan, without anything more, does not constitute a taking of land in the constitutional sense so as to give an abutting owner the right to have damages assessed. The theory being that the marking of a new street upon the city plan is nothing more than the expression of an intention to take the land when the occasion arises for opening the projected street as a public highway. The doctrine is founded upon equitable considerations and a wise public policy. It is in aid of the development, growth and expansion of municipalities. As applied to unimproved land in urban districts it is beneficial to the owners of real estate and in most instances greatly appreciates the value of the land remaining after the street is opened. When the streets are plotted, land owners, prospective purchasers, municipal authorities and all interested persons have a definite chart to guide their future actions. Lots can be laid out and made available for sale; buildings can be erected so as to conform to the lines of projected streets; and in this way the expansion of the city and growth of its population can be facilitated. These considerations were given due weight when the rule as to plotted but not opened streets was originally adopted. As applied to the plotting of streets through unimproved land, or as to projected streets in sparsely settled urban communities, the principle is sound and there is no disposition on the part of this court to make a departure from the settled rule of our cases. Let it then be understood that nothing said or decided in the present case is intended to vary, modify or change the firmly established doctrine to which reference has just been made. As to ordinary cases relating to laying out, opening, widening, extending and grading streets, lanes and alleys, the settled rule relied on by the city as to the time of the taking

and as to when the trespass, if any, was committed, still remains in full force and effect.

It now remains to be determined how much of what has been said applies to the facts of the present case. The construction of the parkway is not an ordinary or usual undertaking on the part of the city; it is unusual and extraordinary. This great boulevard is not intended for the ordinary purposes of commercial travel. Its purpose is to add charm and beauty to the city and to give pleasure to its population. It is a defined public way within specified and limited boundaries. It cannot serve the purpose for which it was intended until completed. A completion in part would serve no useful public purpose and moneys expended on the unfinished undertaking would be deemed wasted. The parkway must therefore be regarded as one entire public improvement and it is important to keep this thought in mind in discussing the principles of law here involved. What then is the legal status of appellant in the present case? Our Constitution provides as follows (Art. XVI, Sec. 8) :

"Municipal and other corporations and individuals invested with the privileges of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction."

There are other provisions to the same general effect. The city is invested with the privilege of taking private property for the construction of its highways and public improvements. It has the power to take the property of appellant for this purpose and the only question here is whether what it has already done amounts to a taking of or injury to the land in question. It has not either paid or secured compensation for the land taken, if there was a taking, as the Constitution requires. The constitutional mandate is that there shall be "just compensation for property taken, injured or destroyed," and

that the property of appellant was injured by what the
city has done is averred in the petition and not denied
by anyone. It must therefore be accepted as an estab-
lished fact for the purposes of this case. The petition
sets out in detail numerous ways in which appellant has
been injured and we have no doubt that the averments
are true in fact. We do not understand that the city
disputes the facts, but it stands upon the ground that
the time has not yet arrived to assess the damages, and
this because no formal ordinance to open has yet been
passed by councils. More than ten years have passed
since the beginning of the undertaking without an ordi-
nance to open. During this period lands have been con-
demned for parkway purposes in some instances, prop-
erties purchased in others, improvements have been made
and work done on parts of the boulevard, and five mil-
lion dollars (one third of the estimated cost of the entire
improvement) have been expended. All of these things
have been done without an ordinance to open, and not-
withstanding these material facts we are asked to regard
this case as if it were the simple plotting upon the city
plan of a projected street through unimproved land.
The statement of these facts is sufficient to show that the
rule in its essence was never intended to apply to a case
like the one at bar. That the right to compensation,
based upon a taking, may exist in exceptional cases with-
out an ordinance to open, is clearly indicated in the ex-
pression of opinion contained in at least two of our de-
cisions. In Volkmar Street, Philadelphia, 124 Pa. 320,
this court speaking through Mr. Justice WILLIAMS said
(p. 327):

"As between the city and the land owner no right of
action exists......for the recovery of damages until
some act done, or notice or demand made, affecting, or
relating to, the possession or appropriation of the land."

Again, in Whitaker v. Phœnixville Borough, 141 Pa.
327, Mr. Justice GREEN in discussing the Volkmar Street
case, said (p. 332):

"We decided that the right of action to have damages assessed to the owner did not commence until the opening of the street or the doing of some unequivocal act by the city which indicated that the possession of the owner was about to be disturbed."

The plain inference from this language is that if the city did some unequivocal act evidencing an intention to open, followed by actual work done on the projected street, the right to compensation under proper circumstances might accrue even if councils had failed or neglected to pass an opening ordinance. In the very nature of things such cases would be exceptional and we only mention the excerpts above quoted to show that the principle has been recognized as applicable when the facts warrant its application. The present case belongs to this exceptional class. Here we have not one but a series of unequivocal acts covering a period of years and all evidencing the intention of the city to open and complete the parkway. In furtherance of the intention to open and complete the undertaking lands have been condemned under the power of eminent domain, properties purchased, improvements made and large sums of money expended. The city is just as irrevocably committed to the improvement as if the ordinance to open had been passed. The termini of the boulevard are definitely fixed by City Hall at one end and Fairmount Park at the other. The courses and distances are marked on the ground and at some points the parkway is open to public use. Buildings have been torn down at each end and a large amount of work done looking to final completion. As hereinbefore stated the parkway must be regarded as one entire improvement. It is either this or nothing. The city has committed itself to this improvement by its acts just as much as if councils had declared their intention by passing an ordinance to open. The law looks to the substance and not to the form. It is futile to argue that councils have not committed the city to the opening when they have already appropriated millions of dollars

for this purpose.   We consider what has been done as the equivalent of notice to the property owners that their lands would be appropriated for parkway purposes and that their possession was about to be disturbed.

Now a word as to the situation of abutting owners whose properties are affected by the proposed improvement.   The municipal arm of the city has lain upon all properties within the lines of the parkway, with such restrictions and limitations as are implied thereby, for a period of about twelve years.   New buildings cannot be erected, nor can valuable improvements be made without risk of loss.   Rental values have been depreciated and general market values seriously affected.   Certainly this condition of affairs should not be permitted to continue indefinitely without redress to property owners who are injured thereby.   More especially is this true when the Constitution guarantees to the private owner "just compensation" for property so "taken, injured or destroyed." The facts show that appellant has suffered grievous injury and should be compensated.   If so, why not now? The only answer is that the city has not formally ordered the opening, and therefore there has been no taking within the meaning of the law.   Our reply has already been indicated.   What the city has done is equivalent to notice that the parkway will be opened and completed and that the lands required for this purpose will be appropriated under the power of eminent domain unless otherwise acquired.   Indeed as we view it the city has committed itself to the opening by a series of acts more expressive of its fixed purpose than could be indicated by a resolution to open without anything more. Our conclusion is that under the facts of this case the property of the appellant has been injured and what the city has done constitutes a taking in the constitutional sense.

It is argued, however, that even conceding a taking within the reason and spirit of the rule, the statute of limitations is a bar to the claim of appellant.   With

this contention we cannot agree. The general rule is that the statute of limitations has no application to a proceeding to assess damages for property taken, injured or destroyed in the exercise of the right of eminent domain: Keller v. Harrisburg & Potomac R. R. Co., 151 Pa. 67; Stauffer v. East Stroudsburg Borough, 215 Pa. 143. It is true there are many exceptions to the general rule, but these exceptions are based upon facts and circumstances peculiar to the cases in which they arise. The learned court below held that the statute was a bar in the present case on the authority of De Haven v. Bartholomew, 57 Pa. 126, and Landes v. Norristown Borough, 21 W. N. C. 212. We do not so read nor understand these cases. The De Haven case was an action of assumpsit against a person taking land charged with the payment of money, as a means of enforcing payment out of the land so charged. The title had been acquired under proceedings in partition and the purchaser gave bonds secured by a recognizance to protect the deferred payments. The action was not upon the recognizance, nor in debt, but in assumpsit for the amount secured by the recognizance which was a charge upon the land. This court held that the recognizance was but collateral to the real debt which the law made a lien upon the land, as to which the statute of limitations was not a bar. What was said in that opinion as to the nature of the cause of action and form of action has reference to the situation of the parties to that litigation. But even in that case the statute was held to be inapplicable. In the Landes case the injury resulted from the grading of a street, and the common law action would be in case of trespass, and in addition the change of grade had been actually made nine years before the proceeding was instituted. The damages were sustained when the grade was changed in fact and the right of action accrued when the damage was actually done. In other words the borough having done a specific thing (changed a grade) in a lawful manner, and thus caused the injury by a com-

pleted act on the ground, of which the property owner had notice at the time, his right of action then accrued. No such situation is presented by the case at bar. Here there was no completed act on the property of appellant by the city so as to affect the owner with notice that its possession was about to be disturbed, nor was there any specific thing done to change the physical conditions on the ground. Hence under the facts of the present case, no formal resolution to open having been passed, and no specific act having been done on the ground, no definite time was fixed when the statute of limitations could be said to have commenced to run. We entirely agree with learned counsel for appellant, that as to the applicability of the statute the underlying principle of the following cases is conclusive against the contention of appellee: Delaware, Lackawanna & Western R. R. Co. v. Burson, 61 Pa. 369; Hannum v. Borough of West Chester, 63 Pa. 475; McClinton v. Pittsburgh, Ft. Wayne & Chicago R. R. Co., 66 Pa. 404; Seiple v. Baltimore & Cumberland Valley Extension R. R. Co., 129 Pa. 425; Brower v. Philadelphia, 142 Pa. 350; Stauffer v. East Stroudsburg Borough, 215 Pa. 143. Those cases which hold the contrary view are easily distinguishable. In some instances there was the confirmation of a report, in others the entry of a decree, or an ordinance to open, or actual work done in grading the street, and for reasons of this kind the statute of limitations was held to be applicable. But in the present case nothing of this kind appears. Here there was no decree, no ordinance to open, no actual work done on the property involved, no change of physical conditions on the ground, and no definite thing done by way of giving notice to appellant that its right of action had accrued. But if what the city did amounted to a taking, and we have so decided, the act of assembly gave appellant the right to present its petition asking for the appointment of viewers to assess damages. Upon this branch of the case what was said in Bowers v. Citizens Water Co., 162 Pa. 9, is peculiarly applicable. It

was there said that (p. 11) : "From the judgment on this verdict the defendant appeals, and the only practical contention it makes against the plaintiff's right of recovery, is that the defendant had never filed a bond, or made a definite appropriation of a specific quantity of water which they would require.   To these defenses it is only necessary to say in reply that the right of the plaintiff to commence the proceeding by a petition for viewers does not depend, either upon the filing of a bond by the defendant,. or the making of a specific appropriation of a definite quantity of water which they intended to use. The right to commence the proceedings is given by the 41st section of the Act of April 22, 1874, P. L. 73, to either of the parties, and it is sufficient to know that the water was actually taken and used for corporate purposes for more than a year when the petition was presented.   If such defenses were permitted to prevail, the company might prevent indefinitely any recovery of damages by the persons injured."   In the case at bar the statute gave appellant the right to commence the proceeding by asking for the appointment of viewers to assess damages for the injuries sustained, and if this right be denied, the city may indefinitely prevent the recovery of damages just as is pointed out in the language of this court above quoted.   We think it is clear that the statute of limitations is not a bar to a recovery in the present case and that the property of appellant has been injured to such an extent as to constitute a taking within the meaning of the Constitution.   It therefore follows that appellant is within its legal rights in presenting a petition asking for the appointment of viewers to assess damages.

Order reversed, petition reinstated and record remitted with direction to appoint viewers as prayed for.   Costs of this appeal to be paid by appellee.

Mr. Justice MOSCHZISKER dissents.