OLSEN *v.* CITY OF DEARBORN.

HOLMEN *v.* SAME.

OLSON *v.* SAME.

COON *v.* SAME.

ORR *v.* SAME.

1. MUNICIPAL CORPORATIONS—MEASURE OF DAMAGES—DEPRECIATION BECAUSE OF SERVITUDE.

In actions against city for damages resulting from the laying of sewer pipes and water mains across plaintiffs' properties without having first obtained title or other right to do so by grant or condemnation, damages are measured by the depreciation, if any, in the value of the respective parcels caused by defendant having unlawfully imposed the servitude thereon, and are not measured in accord with instruction given that where only a part of a parcel of land is taken just compensation is to be determined by the amount which the value of the parcel from which it is taken is to be diminished.

2. SAME—TRESPASS—INSTRUCTIONS—TAXATION.

In actions against city for damages resulting from the laying of sewer pipes and water mains across plaintiffs' properties without having first obtained title or other right to do so by grant or condemnation, instruction that damages might be allowed plaintiffs on the theory that after the construction their respective properties were assessed at excessive valuations which resulted in payment of larger amounts of taxes than should have been required of them *held*, error, where the taxes were paid without protest and such remedy as there was therefor was provided in the tax statute.

SHARPE, J., dissenting.

Appeal from Wayne; Cramton (Louis C.), J. Submitted June 22, 1939. (Docket Nos. 106–110, Calendar Nos. 40,584–40,588). Decided November 9, 1939. Rehearing denied December 20, 1939.

Separate actions by Niels H. F. Olsen and wife, Erling Holmen, Walfrid Olson, Alonzo Coon and wife, and Howard D. Orr and wife against City of Dearborn, a municipal corporation, for damages for reduction in value of real property. Cases consolidated in part for trial and appeal. Verdicts and judgments for plaintiffs. Defendant appeals all cases. Reversed and new trials ordered.

*Robert A. Acchione* (*Milman Andrews,* of counsel), for plaintiffs.

*James E. Greene,* Corporation Counsel, *Richard A. Hicks,* Assistant Corporation Counsel (*Walter S. Rae,* of counsel), for defendant.

NORTH, J. Defendant in 1930 constructed sewers and water mains across properties owned by the respective plaintiffs and continues to maintain these municipal structures. Defendant has not obtained from plaintiffs title to the portions of their respective properties occupied by these sewers and water mains either by grant or condemnation, nor has it by any other means obtained the right to construct or maintain these sewers or water mains on plaintiffs' lands. Instead, without legal right defendant has imposed a servitude on each of these parcels. Plaintiffs' suits primarily are for recovery of alleged resultant damages for which they have not been compensated. Clearly for such damages as they may show they have sustained, if any, they are entitled to compensatory damages. But the trial court instructed the jury to assess these damages on the theory that the city had taken and acquired title to a portion of the land of each plaintiff. In part his instruction reads:

"Where only a part of a parcel of land is taken, as is the case here, just compensation is to be determined by the amount which the value of the parcel from which it is taken is to be diminished."

This was error because the measure of damages was the depreciation, if any, in the value of the respective parcels caused by defendant having unlawfully imposed the servitude thereon.

Upon trial before a jury plaintiffs (except in the *Orr Case*) were permitted to have further recovery of damages on the theory that after the construction of these sewers and water mains their respective properties were assessed at excessive valuations which resulted in the payment of larger amounts of taxes than plaintiffs should have been required to pay. This was error. The taxes were paid without protest, and are not recoverable in a proceeding of this character. If plaintiffs suffered a wrong in this particular, the remedy is provided in the tax statute.

The judgments entered in the circuit court are reversed and new trials ordered in the respective cases. Costs to appellant.

BUTZEL, C. J., and WIEST, BUSHNELL, POTTER, CHANDLER, and McALLISTER, JJ., concurred with NORTH, J.

SHARPE, J. (*dissenting in part*). In December, 1921, Emil Cunov and wife, being the owners of 30 acres of land located at the corner of Gulley and Ford roads in Dearborn township, Wayne county, Michigan, caused the same to be surveyed and divided into single parcels of land of approximately one acre each. These parcels of land were divided by a road running east and west and designated as Doxtator avenue. There is no evidence that the

survey of this tract of land was recorded and it was known as the Emil Cunov's unrecorded plat or survey. In 1929, this land was taken into the city of Dearborn.

The parcels of land were sold outright or on land contract. In 1929, plaintiffs Olsen and wife were purchasing their property on a land contract while the other four plaintiffs were owners in fee of their property.

Prior to May 20, 1929, the city of Dearborn had let contracts for and was installing sewer and water mains along Ford road, being the northerly boundary of the plat, and Gulley road, being the westerly boundary of the plat, when several owners of property in the unrecorded plat petitioned the city of Dearborn to construct lateral sewers in the entire district rather than the mentioned streets. Three of the plaintiffs, together with other owners in the unrecorded plat, on November 8, 1929, petitioned the city of Dearborn requesting said city officials to appoint plaintiff Olsen as their representative to serve on a sewer and street opening committee, and in accordance therewith the following plan was submitted to the city:

"1. City of Dearborn to carry cost of moving houses necessary with new street opening. Owners to be notified to that effect.

"2. City engineer to replat subdivision, prints to be furnished for owner's approval.

"3. Request corporation counsel's assistance in redeeding properties.

"4. Opening of all streets and alleys at once, corporation counsel be given full power together with committee. Complete the job and be done with it."

The opening of streets and alleys in accordance with the above plan would result in dividing undivided parcels so that the owners of same, including plaintiffs' parcels, would be left with a small strip of property on one side of the street or alley and the balance on the other side. To overcome this situation, plaintiffs requested the city attorney and city engineer to render their assistance in effecting an exchange of properties among the owners so as to leave each owner with a single parcel of land abutting on the street or alley. Acting in pursuance of the above plan, plaintiff and wife joined with Cunov and wife in the execution of a warranty deed to the city of Dearborn for that portion of their premises necessary for the proposed alley. Under the terms of the deed the city of Dearborn waived any assessment against the grantors for the opening of any proposed street or alley. This deed was submitted to the city of Dearborn and by formal resolution of the council accepted by the city on October 8, 1929. Other owners in the above plat delivered similar conveyances to the city in which was contained a similar covenant relative to assessment for streets and alleys.

In July, 1930, the city constructed sewers and water mains among the route of the proposed streets and alleys of the subdivision, but did not construct the streets or alleys as the city was not able to obtain deeds of all the property necessary to open the streets or alleys to their full extent.

In February, 1936, plaintiffs commenced suit in the circuit court of Wayne county for damages for the reduction in value of their property by reason of the city taking possession of the same under claim of ownership by the installation of sewers and water mains in July, 1930, and for additional damages for

taxes exceeding the amount payable if the city had condemned. It was stipulated by counsel that that portion of the testimony taken in the case of *Olsen v. City of Dearborn* that was identical and applicable to the other causes be considered as testimony in the other four causes.

Before the cause came on for trial, defendant filed a motion to dismiss plaintiffs' declaration for the reason that plaintiffs executed and delivered a deed of the property in question to the city of Dearborn which was accepted by the city and placed in escrow with the city attorney pending acquisition of all lands required for the opening of said streets and alleys; and that deeds have been obtained for all parcels of land except 11 parcels which are now under process of condemnation. The trial court denied the motion.

At the close of all testimony, defendant moved for a directed verdict and plaintiff also moved for a directed verdict on all issues except the amount of damages. The court instructed the jury as follows:

"The first issue in this case is, therefore, was this deed legally delivered by the grantors to the city? Under claim of plaintiffs, it was not. Under the claim of defendants, it was. This issue coming to the court for determination under a motion of counsel heretofore made, the court, for reasons already outlined to counsel, finds that there was no valid unconditional delivery of the deed, and that the condition attached to the placing of the deed in escrow was never performed, and hence there was never any authority on the part of Mr. Greene to make delivery of the deed to the city. Hence, there has been no delivery of the deed to the city, and the deed never was effective to pass title to the 18-foot strip, and that title to the 18-foot strip did not then, or at any time, pass to the city by reason of said deed."

The jury returned a verdict for plaintiffs. Defendant appeals and contends that the preparation of maps and plans by a city engineer of proposed streets and alleys without the actual physical opening of such streets and alleys does not constitute the taking of land of such streets and alleys, although sewer and water mains were installed along the route of such proposed streets and alleys; that failure to open streets and alleys physically or to consummate condemnation proceedings within a reasonable time does not create any liability upon the part of the city; that the measure of damages for injury to land caused by a city installing sewers and water mains is the diminished value to the land occasioned thereby and not the market value of the land as though it had been taken for a street or alley; and that when property is taken without compensation having been made therefor or by condemnation, the taxes paid or due upon the remaining portions and accruing subsequent to the taking are not properly included in computing damages. It is the claim of plaintiffs that this is an action to recover compensation for damages for the unlawful taking of land; and that such damages are the same as plaintiffs would be entitled to had the property been taken by condemnation proceedings.

We are in accord with the finding of the trial court that the conditions attached to the placing of the deed in escrow were never performed and hence there was no unqualified delivery of the deed to the city; and that title to the strip of land did not pass to the city by reason of the deed.

The vital question raised by the pleadings and proofs relates to the question of a taking of plaintiffs' property. The trial court directed a verdict in favor of plaintiffs upon this issue. The facts ap-

pear to be that while the deeds of plaintiffs and others were in escrow pending the acquisition of deeds to all the lands within the streets and alleys, the city had adopted a general plan of streets and alleys throughout the subdivision; the city had purchased and paid for certain parcels within the streets and alleys, moved garages and houses within said streets and alleys, had notified certain property owners of its intent to condemn property as of a certain date, purported to accept the deeds held in escrow, and under claim of ownership of the 18-foot strip through plaintiffs' property installed a sewer therein and installed sewers and water mains throughout the subdivision; that no action has been taken by the city to abandon the proposed streets; and that it claims ownership to the 18-foot strip and levied taxes against the property on the basis of the city owning the 18-foot strip and plaintiffs owning the two strips divided by it.

In 4 McQuillin on Municipal Corporations (2d Ed.), p. 376, it is said:

"On the question as to what constitutes a taking of property, the general rule is that the filing of a map of a proposed improvement does not of itself amount to an appropriation of the land included therein. However, under particular statutes the filing of a map may of itself in some cases constitute an appropriation. But the mere location of a street on the plans of a city has been held not a taking or injury of property. Likewise, it has been held that the mere laying out of a road over the land of a party by municipal officers does not constitute a taking before the actual opening of the road, so as to entitle the landowner to damages."

But, where more than preliminary steps have been

taken, the rule is as stated in *Philadelphia Parkway,*
250 Pa. 257, 263, 264 (95 Atl. 429):

"That the right to compensation, based upon a·
taking, may exist in exceptional cases without an
ordinance to open, is clearly indicated in the expres-
sion of opinion contained in at·least two of our de-
cisions.  *  *  *

"The plain inference from this language is that
if the city did some unequivocal act evidencing an
intention to open, followed by actual work done on
the projected street, the right to compensation under
proper circumstances might accrue even if councils
had failed or neglected to pass an opening ordi-
nance."

In the case at bar the city of Dearborn through
its city officials performed acts which evidenced an
intention to open streets as well as construct sewer
and water mains. In our opinion, the above case is
controlling upon the right of plaintiffs to recover
damages.

Defendant city contends that plaintiffs by virtue
of their request and the total failure to complain
at the time the sewer and water mains were installed
are now estopped from asserting any claim to dam-
ages. We are not in accord with this contention.
The record shows that the request for installation
of sewer and water mains through the property was
on condition that the entire project would be com-
pleted. The failure of defendant to complete its
agreement does not lay a foundation for estoppel
upon the part of plaintiffs.

In *Turner* v. *Village of Stanton,* 42 Mich. 506, this
court said:

"There is nothing in the record of the proceedings
which is returned here by the village clerk, which
can be considered as constituting a waiver, unless it

is that both of the plaintiffs in error united with others in petitioning to have the street laid out. But there was nothing in the petition which waived compensation for any land of the petitioners which might be taken, and it is perfectly consistent with the petition that the petitioners expected to be paid if their land was taken. And they had a right to be paid, beyond question.''

On the question of the amount of damages to be allowed, the trial court charged the jury as follows:

''Where only a part of a parcel of land is taken, as is the case here, just compensation is to be determined by the amount which the value of the parcel from which it is taken is to be diminished. The value of the part actually taken is allowed as direct compensation, but the decreased value of the residue of a parcel on account of the use made of the land taken is also allowed as compensation. Where only a part of a parcel is taken in condemnation proceedings, just compensation is not measured by the proportionate acreage alone. It is not, in this instance, the value of the 18-foot strip considered by itself alone that is to be considered. In such case, just compensation is measured by the amount to which the value of the property from which it is taken is diminished as well as by the value of the 18-foot strip taken. In general terms, the proper measure of damages is the depreciation of market value of the property caused by the condemnation.''

In *Re Widening of Bagley Avenue,* 248 Mich. 1, we said:

''The compensation to be made is to be just. It is the fair cash market value of the property to be taken. The compensation estimated is to be paid in the legal currency of the country. Damages are to be awarded without consideration of the question of benefits to the lands not taken. *Port Huron & S. W.*

*R. Co.* v. *Voorheis,* 50 Mich. 506. Nothing can be fairly termed just compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred. In the case of land actually taken, just compensation awards its value, or the amount which the value of the property from which it is taken is depreciated. *Grand Rapids & Indiana R. Co.* v. *Heisel,* 47 Mich. 393. Where the whole of a parcel of land is taken, the compensation to be made is the fair value of the land so taken. Where only a part of a parcel is taken, just compensation is to be determined by the amount which the value of the parcel from which it is taken is diminished. The value of the part actually taken is allowed as direct compensation, but the decreased value of the residue or parcel on account of the use made of the land taken is also allowable as compensation. *Port Huron & S. W. R. Co.* v. *Voorheis, supra; Fitzsimons & Galvin, Inc.,* v. *Rogers,* 243 Mich. 649; *Johnstone* v. *Railway Co.,* 245 Mich. 65 (67 A. L. R. 373).''

The instruction given to the jury on the measure of damages was evidently taken from the above case. It is the law of this State.

On the question of additional damages for taxes paid or due after July, 1930, assessed against the property remaining after the taking of the 18-foot strip through plaintiffs' land by the city for an alley, the court charged the jury as follows:

''The plaintiff also raises the question for you to determine as to what additional damage he has suffered in the matter of taxes. This question of taxation in this case has peculiar complications. After the deed was executed by the plaintiffs here and accepted by the city, the city admittedly reassessed this lot in accordance with their acceptance of the deed to the 18-foot strip. They did not thereafter, from 1930 on, assess the 18-foot strip to the plaintiff.

They did assess to him that 24-foot strip and the 100-foot strip, one on one side and the other on the other side of that 18-foot strip. Plaintiff here alleges that after 1930 this 24-foot strip was valueless, and that the 100-foot strip was reduced in value. He alleges—he contends here that the valuation used by the city as appraised for taxation under the reassessment was unfair, and that it did not properly take into account the decrease in value of the remaining pieces, the 24-foot strip and the 100-foot strip, after the taking of the 18-foot strip. Now ordinarily plaintiff's only remedy for taxes assessed after the taking would be as provided in the taxation law, which we do not need to go into here, but this remedy under the taxation laws admittedly the plaintiff is not here following, but in this case it was the position of the plaintiff that he had not deeded the land, that owing to lack of delivery of the deed, the city had not acquired title to the 18-foot strip, and maintaining that position, he could not thus contest in the customary way the amount of his assessment. He can now only for the first time in this proceeding raise that question as part of his damages suffered by him up to this time, and so the court instructs you that to the sum so obtained by the decrease in the value of his property by the taking, and by consideration of the value of the 18-foot strip taken, and the interest thereon, you will add whatever proportion of taxes paid or due between the time of the acts of the defendant in July, 1930, to today as you find the value of the property before the acts complained of bears to the value of the property immediately after the said acts."

It is the claim of defendant that the above charge was erroneous in that the jury was instructed that they could take into consideration in the assessment of damages the taxes paid or due and unpaid upon the two strips of land and accruing subsequent to the taking of the property in July, 1930, by reasons

of the decrease in the value of plaintiffs' property caused by the acts of defendant. Under the above instruction the jury was allowed to take into consideration the question of taxes paid or accrued as an element of damages. The facts show the exclusion of the 18-foot strip from the assessment rolls; and that plaintiffs' taxes were reduced by the exclusion of the above strip. We are unable to find any competent evidence showing that the assessment on the remaining property was illegal or that the city acted fraudulently in making such assessment. The jury in considering this phase of the case was allowed to speculate upon the amount of plaintiffs' damages. Citation of authority is unnecessary to establish the principle that a judgment based in part upon speculation may not stand.

The judgment of the lower court is reversed, a new trial is granted, with costs to defendant.

In view of the fact that the same instructions were given in the cases of *Coon* v. *City of Dearborn; Olson* v. *City of Dearborn;* and *Holmen* v. *City of Dearborn,* a like result follows as to these cases.

But the record shows that in the case of *Orr* v. *City of Dearborn,* the trial court excluded from the consideration of the jury the element of taxes paid or accrued and only permitted the jury to consider the value of their property before the taking and after. We find no error in the instruction in this case and the judgment should be affirmed, with costs to plaintiffs.